**DOWN EAST ENERGY CORPORATION**

**v.**

**RMR, INC., et al.**

Supreme Judicial Court of Maine.

Argued April 4, 1996.

Decided June 19, 1996.

Stephen G. Morrell (orally), Eaton, Peabody, Bradford & Veague, P.A., Brunswick, for Plaintiff.

Mark G. Furey (orally), Adrian P. Kendall, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

GLASSMAN, Justice.

RMR, Inc. and Christy's Market, Inc. appeal and Down East Energy Corporation cross-appeals from the judgment entered in the Superior Court (Cumberland County, *Bradford, J.*), following a nonjury trial, in favor of Down East on Counts I and II of its complaint and on RMR's counterclaims. RMR contends, *inter alia*, the trial court erred by determining that RMR was not entitled to cease selling gasoline on a property leased to it by Down East and that RMR suffered no damages as a result of Down East's breach of the parties' modified contract. Down East contends that the trial court erred by determining it was not entitled to an award of its attorney fees. We

vacate the judgment as to Counts I and II of Down East's complaint and as to Count I of RMR's counterclaims.[1]

The record reveals the following pertinent facts: Down East, engaged in the marketing of gasoline to retail dealers, acquired a number of gasoline stations, including a Mobil station located at the corner of Maine and Pleasant Streets in Brunswick. On January 6, 1981, Down East entered into an agreement with RMR, the owner and operator of 7-Eleven convenience store franchises in Maine and New Hampshire, for the lease of the Mobil station for a period of 20 years with two 10-year renewal options. Paragraph 6 of that agreement provides in pertinent part:

USE. The premises *may* be used for the retail sale of merchandise customarily sold at stores operated by or under franchise from LESSEE or at grocery stores of the type commonly called supermarkets, including, but not limited to, groceries, produce, meat, dairy products, beer, wine and alcoholic beverages, gasoline and petroleum products, and sundries, *or for any other lawful purposes.*

(Emphasis added).

Simultaneous with the execution of the lease agreement, the parties also entered into a "gasoline agreement" providing in pertinent part that "Down East Energy agrees to sell to RMR, Inc. petroleum products at [the] Mobil Dealer Tankwagon" price [2] plus a portion of RMR's profit from gasoline sales.[3] The period of time of the gasoline agreement is coextensive with that of the lease. Paragraph 23 of the lease provides:

The parties hereto agree that a material part of this Lease and additional consideration hereunder for the breach of which

---

1. Although Down East's complaint and RMR's answer setting forth its counterclaims contained multiple counts, the basic claims between the parties were set forth in Counts I and II of Down East's complaint and Count I of RMR's counterclaims. The parties do not challenge the court's decision on the remaining counts of their respective pleadings.

2. The parties recognized there were advantages in operating the station as a Mobil station, including dealer identification, advertising and credit cards. Because the station was operated

as a Mobil station, Down East had to buy Mobil gasoline for resale to RMR. The Mobil Dealer Tankwagon price is the price Mobil Oil charges Mobil gas station dealers in the area.

3. Down East's share of the profit from gasoline sales by RMR was to be determined by reference to a matrix attached to the gasoline agreement. According to the matrix, if RMR derived a profit of at least 2.9 cents per gallon of gasoline it sold, Down East would receive a specified portion of it.

default may be claimed, is a supply agreement between LESSOR and LESSEE, under which agreement the LESSEE agrees to purchase all of its gasoline and motor fuels from LESSOR.

Paragraph 18 of the lease provides that the losing party shall pay reasonable attorney fees and court costs to the prevailing party in any action to enforce the lease or for the breach of any covenant or condition contained therein.

Pursuant to the lease agreement, RMR made improvements to the property, including the construction of a convenience store at a cost of $71,000. In addition, RMR expended $59,000 for store equipment, coolers, shelves, gasoline pumps, hoses and equipment. It subsequently operated a 7–Eleven convenience store and a Mobil gasoline station on the leased premises. Following deregulation of the gasoline industry, including the elimination of allocations to dealers, the gasoline sales market became more competitive and RMR experienced a decrease of gasoline sales at the Mobil station. Accordingly, in October 1984, the parties agreed to cease operating the station as a Mobil station and to operate it as an unbranded station. By doing so, the parties were no longer bound by the restriction that only Mobil petroleum products be sold at the station, and they agreed that Down East would supply gasoline to the station at the "spot market" price.[4] The purpose of this agreement was for Down East to supply gasoline to RMR at the lowest possible price, thereby allowing RMR to lower its retail price and increase the volume of its sales. The division of profits remained the same, and RMR agreed to purchase its gasoline for its other stores from Down East as long as Down East's prices were competitive with the lowest price

otherwise available to RMR when it needed gasoline.

Without notification to RMR and without delivering Mobil gasoline to RMR, Down East reverted to the Mobil Dealer Tankwagon price for gasoline sold to RMR. In July 1991, after discovering Down East's reversion and after unsuccessfully attempting to persuade Down East to comply with the modified price terms, RMR ceased selling gasoline at the leased premises.[5]

In May 1992, Down East filed a multicount complaint against RMR, alleging by Count I that it is entitled to possession of the leased premises by reason of RMR's breach of the gasoline agreement[6] and by Count II that it is entitled to damages for lost profits, plus attorney fees and costs, by reason of RMR's breach. RMR by its answer set forth a number of affirmative defenses and counterclaims. By Count I of its counterclaims, RMR, *inter alia*, seeks damages in the amount of the payments made to Down East in excess of the spot market price and its attorney fees and costs for Down East's alleged breach of the amended gasoline agreement.

Following the trial, the court, *inter alia*, found that in October 1984, by mutual agreement and for consideration, the parties modified the lease/gasoline agreement to provide that Down East furnish gasoline to RMR at the spot market price, and that in August 1988, Down East, without notice to RMR and without furnishing Mobil gasoline to RMR, reverted to charging RMR Mobil Dealer Tankwagon prices. The court determined that although the agreements contain no express provision requiring RMR to sell gasoline, there was an implied obligation for RMR to do so for the term of the lease and any renewals. The court also determined

---

4. "Spot market price" is the lowest bulk price for gasoline available on a given day at the South Portland terminal as the result of calls made to available suppliers.

5. The sale of gasoline was resumed in June 1992 by agreement of the parties to preserve the status pending the final resolution of this litigation.

6. After a hearing in February 1994, the court granted Down East's motion of November 1993 to include Christy's Market, Inc. as a party defen-

dant by its amended complaint alleging, *inter alia*, that Christy's had agreed to purchase any and all interest RMR has in the lease and gasoline agreement with Down East and seeking a declaration that Christy's had no rights pursuant to that agreement. Christy's filed a timely answer to the amended complaint setting forth affirmative defenses and a counterclaim for its attorney fees and costs should it prevail in the litigation.

that Down East's unilateral change to the Mobil Dealer Tankwagon price did not render RMR's performance impossible, that RMR had an obligation to bargain in good faith to resolve the parties' pricing dispute, and that RMR had breached the agreements when it discontinued the sale of gasoline in July 1991. Accordingly, a judgment was entered in favor of Down East on Count I of its complaint, awarding it possession of the leased premises, on Count II of its complaint, awarding it $34,498.45, plus interest and costs for loss of business income, and on RMR's counterclaims; and in favor of RMR on the remainder of the counts in Down East's complaint. The court determined that neither party was entitled to an award of attorney fees. Both parties appeal.

■ RMR contends, as it did before the trial court, that Down East's reversion to the Mobil Dealer Tankwagon price was a material breach of the parties' agreement entitling RMR to cease selling gasoline at the station and to recover the overcharges paid to Down East. It also contends that the trial court improperly engaged in a loss-of-profits analysis to determine that RMR failed to satisfy its burden of proving damages. We agree. The agreements between the parties clearly provide that all gasoline sold by RMR at the station is to be purchased from Down East. Down East does not challenge the trial court's determination that there is a binding modification of the original agreement relating to the price charged for gasoline furnished to RMR by Down East. This modification provides that Down East will supply gasoline to RMR at the spot market price rather than the Mobil Dealer Tankwagon price. Paragraph 23 of the lease agreement specifically states that the agreement is a material part of the lease agreement. The price of the gasoline supplied to RMR by Down East is a material and important part of the gasoline agreement. Down East's breach of the gasoline agreement entitled RMR to regard the transaction at an end, to cease selling gasoline at the site of the leased premises and to maintain an action for damages. *Cercena v. Cote*, 572 A.2d 487, 489 (Me.1990); Arthur Linton Corbin, 4 *Corbin on Contracts* § 946, at 809–10 (1951). *See also* RESTATEMENT (SECOND) OF CONTRACTS

§ 253(2), at 286–87 (1981) (where performances are to be exchanged under an exchange of promises, one party's repudiation discharges any remaining duties of performance of the other party with respect to the expected exchange).

■ The purpose of compensatory damages in a contract case is to put the victim of a breach in the same position it would have occupied had there been no breach. *Marchesseault v. Jackson*, 611 A.2d 95, 98 (Me. 1992). RMR's claim of damages is based on the difference between the spot market price and the Mobil Dealer Tankwagon price paid to Down East during the period following Down East's breach of the parties' modified gasoline agreement. The trial court erroneously applied the concept of loss-of-profits to RMR in determining that RMR failed to meet its burden of establishing damages suffered by it as a result of Down East's breach of contract.

The entry is:

As to Counts I and II of Down East's complaint and Count I of RMR's counterclaim, judgment vacated. In all other respects, judgment affirmed. Remanded for further proceedings consistent with the opinion herein.

All concurring.