1997 ME 148

**DOWN EAST ENERGY CORPORATION**

v.

**RMR, INC. and Christy's Market, Inc.**

Supreme Judicial Court of Maine.

Argued June 11, 1997.
Decided July 11, 1997.

John M. R. Paterson (orally), Glenn Israel, Bernstein, Shur, Sawyer & Nelson, Portland, for Plaintiff.

Mark G. Furey (Orally), Edward S. Driscoll, Thompson, McNaboe, Ashley & Bull, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and RUDMAN, JJ.

CLIFFORD, Justice.

[¶ 1] Down East Energy Corporation (Down East) appeals from the judgment entered in the Superior Court (Cumberland County, Bradford, J.) in favor of RMR, Inc. and Christy's Market, Inc. (RMR).[1] Down East contends that the court erred by awarding damages to RMR, by failing to award Down East possession of the Brunswick gas station, and by awarding RMR attorney fees. We affirm the judgment.

[¶ 2] This dispute previously has been before us. *Down East Energy Corp. v. RMR, Inc.*, 677 A.2d 1070 (Me.1996). Down East, a company engaged in marketing gasoline to retail dealers, purchased some gasoline stations, including a Mobil station in Brunswick. RMR, the owner of 7–Eleven franchises, entered into an agreement with Down East for the lease of the Mobil station for a period of twenty years with two ten-year renewal options. The parties also entered into a gasoline agreement, for a period of time coextensive with the lease, pursuant to which Down

---

1. RMR has since sold its franchises to Christy's Market Inc., which Down East named as a party defendant in this action.

East would sell to RMR petroleum products at the "Mobil Dealer Tankwagon" (MDTW) price plus a portion of RMR's profit from gasoline sales.

[¶ 3] RMR improved the property and constructed a convenience store which it subsequently operated as a 7–Eleven along with the Mobil station. The gasoline market became more competitive, however, and sales of gasoline decreased at the Mobil station. In October of 1984, the parties agreed to cease operating the station as a Mobil station and instead decided to operate it as an unbranded station. The parties subsequently agreed that Down East would supply gasoline to the station at "spot market" price. The"spot market" price is "the lowest bulk price for gasoline available on a given day at the South Portland terminal as a result of calls made to available suppliers." *Id.* at 1072 n. 4. Without notifying RMR, however, Down East later reverted to the MDTW price for gasoline. In July of 1991, after discovering Down East's reversion and after unsuccessfully attempting to persuade Down East to comply with the modified price terms, RMR stopped selling gasoline at the leased premises.

[¶ 4] Down East filed suit against RMR alleging, in part, that it was entitled to possession of the leased premises by reason of RMR's breach of the lease agreement (Count I) and that it was entitled to damages for lost profits plus attorney fees and costs for breach of the gasoline agreement. (Count II). RMR counterclaimed seeking, *inter alia*, damages in the amount of the payments made to Down East in excess of the spot market price as well as attorney fees and costs. At the conclusion of the trial, before the first appeal, the court determined that the contract was partially integrated and that the parties had agreed that gasoline would be sold for the duration of the lease. Despite finding that the parties

agreed to modify the pricing terms of the original agreement to the "spot market" price, the trial court determined that RMR breached the agreement when it ceased selling gasoline despite Down East's unilateral reversion to MDTW prices. Accordingly, the court entered a judgment awarding Down East damages of $34,498.47, for loss of business income resulting from RMR's cessation of gasoline sales, and possession of the premises. The trial court also ruled against RMR on its counterclaim because RMR had failed to prove that it lost profits on gasoline sales.

[¶ 5] We vacated the judgment, concluding that Down East had materially breached the gasoline agreement by charging the MDTW price and that the breach entitled RMR to regard the transaction at an end. *Id.* at 1073. We also held that the trial court erred by using a loss-of-profits analysis to find that RMR had failed to meet its burden of establishing its damages on its counterclaim and noted that the "purpose of compensatory damages in a contract case is to put the victim of a breach in the same position it would have occupied had there been no breach." *Id.* (citation omitted). On remand, RMR filed a motion for the entry of a judgment on Down East's complaint and its counterclaim. Without receiving any additional evidence, the court relied on the previous testimony of Paul Garrett and the exhibit[2] dealing with RMR's damages that Garrett used in the earlier trial and concluded that RMR was entitled to damages totaling $218,709.98, as well as possession of the premises. The court also concluded that RMR was entitled to attorney fees in the amount of $48,515.00. This appeal by Down East followed.

I.

[¶ 6] Contending that the trial court erred by awarding damages, Down East ar-

---

**2.** Garrett, RMR's expert, testified that he prepared an exhibit that compared the price that RMR paid for gasoline from Down East between 1986 and 1991 with "spot market" prices that it paid at its other locations from other suppliers for the same time period. Garrett concluded, based on this exhibit, that the damages totaled $218,709.98. Down East cross-examined Garrett to expose the assumptions on which he relied to construct his exhibit. Garrett admitted

that the MDTW price can sometimes be lower than the "spot market" price and that he was unaware of the substance of contracts that Down East had with suppliers that might affect which company they bought gas from, and at what price, on any given day. Down East, however, did not introduce any independent evidence concerning the "spot market" price available to it between 1986 and 1991.

gues that the presumptions on which Garrett relied are unwarranted by the evidence, namely, that Down East could have obtained and sold gasoline to RMR for the same price that *other* suppliers were selling spot market gasoline to RMR at *other* stations. Down East also argues that the exhibit calculated damages for the wrong time period because the court already had found that the breach occurred in 1988 instead of 1986.

[¶ 7] The assessment of damages is within the sole province of the factfinder, *Glidden v. Belden,* 684 A.2d 1306, 1320 (Me. 1996), and a damage award will be disturbed only "if there is no competent evidence in there cord supporting [it.]" *Id.* (citation omitted). M.R. Civ. P. 52(a). RMR had the burden on remand in this case to prove its damages, *Dairy Farm Leasing Co., Inc. v. Hartley,* 395 A.2d 1135, 1138 (Me.1978), and the "well settled law [is] that damages are not recoverable when uncertain, contingent, or speculative.... They must not rest wholly on surmise or conjecture." *Michaud v. Steckino,* 390 A.2d 524, 530 (Me.1978). We have made clear, however, that reasonableness, not mathematical certainty, is the criteria for determining whether damages were awarded appropriately.

> Damages are not fatally uncertain for the reason that the amount of the loss sustained is incapable of exact proof by mathematical demonstration. The triers of facts are allowed to act upon probable and inferential as well as direct and positive proof. They are permitted to make the most intelligible and probable estimate which the nature of the case will permit, given all the facts and circumstances hav-

ing relevancy to show the probable amount of damages suffered. A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability.

*Merrill Trust Co. v. State,* 417 A.2d 435, 440–41 (Me.1980).[3] Thus, circumstantial evidence approximating damages can be sufficient in a case such as the one presently before us.

[¶ 8] The calculation of damages through the use of RMR's exhibit was a proper approximation based on circumstantial evidence of the price that was available to Down East. The very nature of "spot market" pricing renders impossible the discovery of exactly the price for which Down East could have bought gasoline at the terminal every day for six years. Although Garrett was cross-examined regarding the assumptions he used to prepare the exhibit, the court was free to accept the testimony and the exhibit as credible evidence of damages. Moreover, Down East failed to introduce any evidence to contradict the conclusion drawn by Garrett through the use of the exhibit. The court made an "intelligible and probable estimate" of the damages. The evidence permits its conclusions, and they are not clearly erroneous.[4]

## II.

[¶ 9] Down East contends that it is entitled to possession of the premises because RMR has failed to perform the contract by failing to purchase gasoline from Down East. RMR argues that it did not have an obligation to purchase gasoline at

---

3. *See also Currier v. Cyr,* 570 A.2d 1205, 1210 (Me.1990) ("an award must be supported by some evidence of the value of property damaged or expenses incurred"); *Doane v. Pine State Volkswagen, Inc.,* 377 A.2d 481, 485 (Me.1977) ("the amount of damages may be established by approximation as long as the jury can reach a specific conclusion"); *McDougal v. Hunt,* 146 Me. 10, 14, 76 A.2d 857, 860 (1950) (amount of damages must be established to reasonable "as distinguished from mathematical, certainty by the exercise of sound judgment.").

4. Down East's contention that the damages were calculated for the incorrect time period is also unavailing. Although the trial court in its origi-

nal opinion and this Court during the first appeal made statements about when the breach occurred, in neither decision was the *actual* date of Down East's breach relevant. On remand, the trial court accepted an exhibit that calculated damages from 1986, and Down East's contention that the breach occurred in 1988 is inconsistent with the court's present award of damages based on an exhibit spanning back to 1986. Given these circumstances, the trial court, on remand, implicitly found that the breach occurred in 1986. Moreover, Down East requested no further findings of fact. Because evidence in the record demonstrated that a fact finder could have concluded that the breach occurred in 1986, that finding is not clearly erroneous.

the higher, MDTW price, and that it has otherwise complied with the terms of the lease by paying rental and maintaining the premises.

[¶ 10] The lease agreement by its terms incorporated the gasoline agreement and made it a material part of the lease. When Down East breached the gasoline agreement, therefore, its conduct also breached the lease. When one party breaches a contract, the nonbreaching party may, depending on the circumstances, either treat the breach as partial or total. "A total breach of contract is a non-performance of duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end ... If [the] breach is not sufficiently material and important for this, the breach is called a partial breach." Arthur Linton Corbin, 4 *Corbin on Contracts* § 946 at 809–10 (1951). If a party elects to treat the breach as partial, however, it must still perform its obligations in order for it to avoid also breaching the contract. *Id.* at 811. ("A partial breach by one party [,however,] does not justify the other party's subsequent failure to perform....."). In this case, RMR ceased buying gasoline at the convenience store but complied with the lease in all other respects.

[¶ 11] We disagree with Down East's contention. RMR did not breach the lease because it had no obligation to buy gasoline from Down East at the MDTW price. The agreement required the "spot market" price to be used. RMR's obligation was to buy gasoline at the *spot market price*, and Down East has not shown that RMR would not purchase gasoline from Down East if Down East offered the correct price to RMR. Because RMR has otherwise complied with the ters of the lease/gasoline agreement, it has treated the breach of Down East as partial and has elected to continue performance with the remainder of the contract, namely, the lease of the premises.[5] Because Down East has failed to prove that RMR breached the lease, RMR is entitled to possession of the

---

5. In the event that Down East offers gasoline at the "spotmarket" price to RMR, and RMR refuses to purchase gasoline, Down East could

premises as the lessee pursuant to the terms of the lease.

## III.

[¶ 12] Down East also challenges the award of attorney fees to RMR. Paragraph 18 of the contract provides that if suit is brought to "enforce any covenant of this Lease or for the breach of any covenant or condition herein contained, the parties hereto agree that the losing party shall pay to the prevailing party a reasonable attorney's fee, which shall be fixed by the Court, and Court costs." Because we conclude that damages were correctly awarded against Down East, and RMR is also entitled to remain in possession of the premises, the court correctly concluded that RMR was entitled to attorney fees.

The entry is:

Judgment affirmed.

then argue that RMR had breached the agreement existing between the parties.