STATE OF MAINE                                    SUPERIOR COURT
HANCOCK, SS.                                       CIVIL ACTION
                                                  Docket No. CV-01-37
                                                  JLH         II/

Acoustic Energy Corp.,
        Plaintiff


        v.                                        Decision and Judgment

DONALD L. GARBRECHT
LAW LIBRARY

Scott Spencer,
        Defendant

NOV 21 2002


        Hearing on the complaint was held on August 28, 2002. Both a representative of

the plaintiff and the defendant were present, and each party was represented by counsel.

        The plaintiff is in the business of furnishing and operating sound and light

systems that are used for concerts and other events. In April 2001, the defendant, who

produces concerts, had contact with the plaintiff's production and rental manager

regarding a music festival that was planned for June 2001. The parties met several times

and, on May 22, inspected several possible festival sites in the Greenville area. On the

basis of the site inspections, it appeared that the festival would be held on the premises of

the Squaw Mountain ski lodge. Approximately one week prior to the festival starting

date of June 22, the plaintiff learned that the festival would be held at a different location.

That location required the erection of a stage. Because of this development, the plaintiff

secured the services of a business that, for $2,400, could provide a performance stage.

The parties dispute whether the defendant agreed to pay that extra amount in addition to

the sum that would be due for the lighting and sound systems.

        Several days after the parties had agreed on the need for the stage, they signed a

written contract.[1] See plaintiff's exhibit 1. The contract provided that the plaintiff would

_____

[1] In the writing, the parties were identified as Acoustic Energy Corp. and a "Ya Ya
Productions" located in Brewer. The defendant at bar does not operate under that latter
name and is unfamiliar with any such entity. The court gathers that the plaintiff, who had

1

be entitled to total payments of $10,000. Of this, half was due when the contract was executed, and the balance was to be paid prior to the first musical performance at the festival. Appended to the contract was an itemized description of the components in the sound system and of several other items, including a "Roofing System," that the plaintiff agreed to provide for the festival. The total itemized charge for labor, equipment and transportation is $8,380, and there is a stated discount of $1,620. The final line of the itemized statement is designated, "ORDER TOTAL," and the amount stated there is $10,000, which actually is the sum of $8,380 and $1,620. The contract provided, "All terms of this agreement between the parties are included here-in [sic] and no additional terms shall be Binding [sic] unless in writing and signed by both parties." Plaintiff's exhibit 1, ¶ 14.

At or near the time the contract was signed, the defendant paid the plaintiff $5,000, as the contract required. On June 22 (the first day of the festival), the plaintiff set up the sound and light systems, and its subcontractor erected the stage and roof. The defendant refused to pay the plaintiff the final $5,000 due under the contract and the cost of the stage, because he felt that his remaining obligation under the contract was only $1,760 ($8,380, less the "discount" of $1,620 and the prior payment of $5,000). The plaintiff then threatened to pack up its equipment and leave the premises. Under those circumstances, the show could not have gone on. Consequently, the defendant issued a check for $5,000 in order to appease the plaintiff. When he issued the check, he intended to stop payment on it and address the contractual dispute with the plaintiff after the festival ended. In fact, the plaintiff attempted to negotiate the check at the drawee bank, but the bank would not honor it. Additionally, the plaintiff threatened to withdraw from

produced the form contract, may have had a prior transaction with that named party and used the same form here without changing the name of the customer.

The evidence does suggest that the named defendant owns a New Hampshire corporation that is authorized to do business in Maine. The defendant testified that the foreign corporation was intended to be a party to the contract at issue here. However, the defendant is identified in the contract as the "contact," and he signed the contract without indicating any representative capacity. He has not argued that the corporate entity is the proper defendant, and in fact he has acknowledged that he bears some liability to the plaintiff. Under these circumstances, the court resolves this case on the predicate that any liability under the contract is his in an individual capacity.

2

the festival if the defendant failed to pay the amount it contends is due for the stage. The defendant issued a check for $2,400 with the same intention not to allow the check to clear. That was the case.

The defendant then signed an agreement promising to make "full payment" no later than June 25. Under the contract, if he failed to do so, he would remain liable for that "full amount" and 25% of any outstanding balance if those sums were paid by July 5. If he failed to pay the amount due by July 5, then he would still be obligated to pay the amount due, plus an additional 25% of any balance, and "legal collection fees." *See* plaintiff's exhibit 2. Based on this June 22 agreement, the plaintiff performed pursuant to the terms of the earlier contract.[2] When the plaintiff presented the $2,400 check for payment on June 25, the drawee bank would not honor it. Further, the defendant failed and refused to pay any money toward his remaining balance under the written contract.

From the totality of the evidence, the court finds that the parties initially agreed that the plaintiff was to be paid $10,000 to provide sound and lighting at the festival. The best evidence of that agreement is found in paragraph 13 of the contract, which clearly and expressly sets out the amount of consideration for performance by the plaintiff. The itemized schedule is not consistent with that amount. However, even that document (plaintiff's exhibit 1A) provides that the total payment would be $10,000. With identical total noted expressly in the contract and the attachment, the inclusion of the integration provision, and the defendant's willingness to sign the agreement, the court finds that the numerical breakdown of individual charges is of secondary importance and attributable instead to sloppiness on the part of the plaintiff's employee who prepared the document.

When the defendant initially refused to pay the plaintiff the balance of $5,000 prior to the beginning of the festival on June 22, he committed a breach of the contract.

---

[2] At trial, the defendant testified that the stage and roofing systems were inadequate. However, several days after the festival ended, he wrote to the plaintiff's principal, "All in all your crew and equipment was [sic] wonderful" except for the contractual difficulties that form the basis for this action. *See* Plaintiff's exhibit 7. He also characterized the festival as "wonderful" and noted that the attendance goal had been achieved. In light of this letter, the court places no significance on the defendant's testimony that the plaintiff did not perform satisfactorily. Further, even if the plaintiff's performance had been defective, the defendant has not proven any damages from any such breach.

3

Further, the plaintiff was entitled to treat this breach as a total breach of the defendant's obligations under the contract. *See Down East Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶10, 697 A.2d 417, 421 ("A total breach of contract is a non-performance of duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." (Citation omitted.)). Here, although the defendant had paid the plaintiff half of the consideration required by the contract, the plaintiff had also engaged in a significant measure of the performance required under the contract because it had committed its resources to prepare and set up the sound and light systems. The plaintiff therefore was ready and willing to perform as required. *See Pelletier v. Dwyer*, 334 A.2d 867, 871 (Me. 1975). Then, however, when the time came for the remaining payment, the defendant refused to pay that remaining half of the total contract price. Under these circumstances, the plaintiff was within its rights to regard the defendant's conduct as a total breach rather than as a partial breach that would have obligated the plaintiff to perform its own obligations, regardless of the defendant's failure. *See Down East Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 10, 697 A.2d at 421. Consequently, the plaintiff was entitled to terminate its performance under the contract by packing up its equipment and leaving the festival grounds. Its communication of that intention to the defendant was not improper and therefore cannot be viewed as contractual duress, even if such a doctrine is good law in Maine. *See City of Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 183 (Me. 1984).

Because the defendant committed a total breach of the contract and the plaintiff justifiably regarded it as such, the parties were then free to enter into a new agreement. They did so. *See* plaintiff's exhibit 2. The defendant argues that he was coerced into executing the contract because he was threatened by agents of the plaintiff. Although those agents made inappropriate comments ("We know where you live"[3]) in a difficult setting, the court finds that the defendant chose to enter into the contract not because of any such statements. Rather, because he committed a total breach of the contract and created a justification for the plaintiff to withdraw its services that were essential to his

---

[3] The parties dispute whether those comments were made jokingly. This factual dispute is not material because the court finds, for the reasons set out in the text, that the remarks did not cause the defendant to enter into the new agreement.

4

festival production, he put himself in a bind: through his own conduct, he had little choice but to restructure his contractual relationship with the plaintiff. The court therefore finds the June 22 handwritten agreement to be a valid and enforceable contract. The defendant failed to make any payments to the plaintiff by June 25 (aside from the initial $5,000 payment when the first contract was executed), and he is therefore liable for the amount due under the June 22 agreement ($5,000), plus 25% of that balance ($1,250)[4] and reasonable attorneys fees.

The court has considered the parties' written submissions on the claim for attorneys fees. The court awards attorneys fees of $6,350. Any costs of court to which the plaintiff is entitled under 14 M.R.S.A. § 1502-B *et seq.* shall exclude such costs already included in the attorneys fees awarded herein.

The plaintiff also alleges that the defendant is liable for an additional $2,400 under a separate agreement that covered the stage. The defendant contends that the cost of the stage was included in the original contract and that he is not obligated to pay a separate amount. Prior to the time the parties entered into the original contract, they inspected several possible venues for the festival. Originally, the leading candidate was the deck at the lodge at the Squaw Mountain ski resort. Because a railing ringed the perimeter of the deck, the parties considered installing a stage on top of the deck to improve the audience's ability to see the performers. The contract was drafted without a specific reference to a stage. However, the contract provided for a roofing system, and a stage was still within the contemplation of the parties. Before the contract was finally executed, the plaintiff learned that the defendant had selected a different site, that would require a stage. The contract, which was formalized shortly thereafter, included an integration clause regarding "[a]ll terms of this agreement." In light of these circumstances, the court cannot find that a stage is outside of the scope of the agreement embodied in the written instrument. As is noted above, the total contract price was $10,000. This forecloses the plaintiff's claim for an additional amount attributable to the stage.

---

[4] The June 22 agreement requires the defendant to pay a second 25% premium if there existed a balance due as of July 5. In fact, there remained such a balance. However, the plaintiff has expressly waived any claim to that additional amount.

Because the plaintiff was not entitled to seek this additional amount from the defendant, it was not privileged to withhold performance on June 22 based on the defendant's failure to pay that additional amount. However, for the reasons set out above, the plaintiff was justified in threatening to withdraw its services because of the defendant's failure to pay the $5,000 that was due on June 22. Therefore, that the plaintiff wrongfully insisted that the defendant pay more money is of no effect in the end.

The entry shall be:

For the foregoing reasons, judgment is entered for the plaintiff in the amount of $6,250, plus interest at the statutory rate, costs of court not otherwise awarded herein, and attorney's fees in the amount of $6,350.

Dated: November 8, 2002

_____
Justice, Maine Superior Court

**FILED &
ENTERED**

NOV 1 2 2002

**SUPERIOR COURT
HANCOCK COUNTY**

6