STATE OF MAINE                          SUPERIOR COURT
Penobscot, SS.                          Docket No. CV-09-07

                                        ୨୯ /ฟฟฟ - Pɛ ル -

CARTER W. HALL,                 )
                    Plaintiff,  )
                                )
                                )
                v.              )       JUDGMENT
                                )
                                )
INHABITANTS OF THE TOWN         )
OF PATTEN                       )
                    Defendant.  )

This matter came before the Court for a non-jury trial on Counts I and III of Plaintiff's
Complaint on December 9, 10 and 13, 2010. Written closing arguments were later submitted.
Summary Judgment was granted for the Defendant on Counts II and IV on November 3, 2010.

The Court finds the following facts:

1.      Carter Hall became employed by the Town of Patten Ambulance Service on an
        on-call basis. Carter Hall and the Town of Pattern, through the person of
        Edward Noyes, also made agreements that the Town would sponsor Carter
        Hall in his pursuit of EMT and paramedic licenses.

2.      The agreements between Carter Hall and the Town contained the following
        elements:
        a.  the Town would pay 25% of the tuition to Northern Maine Community
            College. If the student completed the coursework, was licensed and agreed to
            make himself available to work for the Town's Ambulance Service on an "as-
            needed" basis for a specified period of time, the Town would pay the
            remaining 75% of the tuition;
        b.  the Town would pay for Mr. Hall's books;
        c.  initially, Mr. Hall and the Town agreed that there would not be any mileage
            reimbursement.[1] Later, in March of 2005, the agreement was modified and
            the Town agreed to pay a $20.00 stipend per trip to Mr. Hall and the other
            student the Town was sponsoring in the EMT course, and the students were to
            coordinate their education so that mileage expenses would be kept to a
            minimum; and

---

[1] The Selectmen approved Town sponsorship of Mr. Hall (and Mr. Morse). Before presenting the issue of town
sponsorship to the Town, the town manager was consulted. The town manager, who is the supervisor of the
ambulance director, would not support educational sponsorship of Mr. Hall and Mr. Morse if the proposal included a
mileage reimbursement provision.

1

d. The Court does not find that Mr. Hall's agreement required the Town to provide Mr. Hall with work, but did require that Mr. Hall make himself available to work for the Ambulance Service for specified lengths of time upon attaining the various levels of licensure (if he accepted the Town's payment of his full tuition).

3. The agreement negotiated by the Town and Carter Hall (and Brett Morse) was different from a policy that the Town had adopted a few years earlier.[2] The written policy provided that students would receive a per mile mileage reimbursement, and as mentioned above, the Court finds that Mr. Hall (and Mr. Morse) negotiated a different agreement with the Town. The Town's written policy was superseded by the particular agreement negotiated between the Town and Mr. Hall.

4. The Court was convinced by Mr. Noyes' testimony that he did not guarantee Mr. Hall any particular number of hours at any time.

5. The Court accepts Mr. Hall's testimony that Mr. Noyes spoke to him (Mr. Hall) about someone with an EMT license being given some "preference" in scheduling. However, the Court does not the accept the interpretation given by Mr. Hall to the term "preference" in scheduling. The Court finds Mr. Noyes scheduled people for hours with the ambulance service after taking into consideration many factors, including the licensure level of the employees, the length of service, availability, and other factors. While the Court accepts that Mr. Noyes spoke about a "preference" in scheduling for paramedics, the Court does not find that Mr. Hall was promised a particular schedule, a particular number of hours or a preference over other more senior employees. The Court accepts that employees are "worked into" the schedule of the ambulance department.

6. The Court is not satisfied that the agreement between Mr. Hall and the Town (or Mr. Morse and the Town) provided that the students would be given or guaranteed any hours of EMT work during their education or upon completion of education and licensure. While Mr. Hall certainly had a hope and perhaps in his own mind an expectation, the Court is not satisfied that the agreement between Mr. Hall and the town contained any provision for any hours of work upon attaining licensure. During his entire tenure with the ambulance service Mr. Hall never received more than 15 hours of work per month. The fact Mr. Hall did not receive many hours and continued with the ambulance service supports the Town's argument that the Town did not promise Mr. Hall any particular number of hours of work.

7. Mr. Hall began working for the ambulance service in April of 2004. He gained his intermediate EMT in February of 2005. Mr. Hall's tuition for the

---

[2] It appears that the differences between the policy as written and the agreement reached by Mr. Hall and the Town did not become an issue until November of 2005 when Mr. Hall brought the 2001 document to the town's attention.

2

Intermediate course was fully paid by the Town, and in return Mr. Hall agreed to make himself available to the Ambulance Service on an "as-needed" basis through February, 2006.

8. As mentioned above, mileage reimbursement became a component of the agreement between Mr. Hall and the Town in March of 2005. The Court is satisfied that the Town instructed Mr. Morse and Mr. Hall to coordinate their schedules so that the Town's expenses would be kept to a minimum.

9. Mr. Hall and Mr. Morse completed the basic EMT course, and the Town paid in accord with the agreement. Mr. Hall and Mr. Morse completed the intermediate coursework and became licensed, and the Town paid in accord with the agreement. Mr. Hall and Mr. Morse began the education to become licensed paramedics in the spring of 2005. Mr. Morse and Mr. Hall signed up for the classes, but Mr. Hall dropped a course at some point during the spring semester.

10. In the late summer of 2005, a controversy arose between the Town and Mr. Hall with respect to Mr. Hall's paramedic education. Mr. Morse presented his clinical and class schedule to Mr. Noyes, and Mr. Noyes asked whether Mr. Morse had coordinated with Mr. Hall. Mr. Morse reported to Mr. Noyes that he had tried to coordinate with Mr. Hall, but Mr. Hall was not being responsive. Mr. Noyes instructed Mr. Morse to try again to coordinate with Mr. Hall, but when Mr. Morse returned a few days later, and close to the time the classes were beginning, Mr. Morse again reported he had been unable to coordinate with Mr. Hall. Mr. Noyes accepted Mr. Morse's schedule and decided that he (Mr. Noyes) would deal directly with Mr. Hall.

11. Mr. Noyes asked Mr. Hall for his class and clinical schedule, but Mr. Hall did not provide the schedule.

12. On August 28, 2005 Mr. Hall approached Mr. Noyes, who was in the local cemetery doing landscaping work. Apparently unbeknownst to the Town, the previous semester Mr. Hall had dropped a course that Mr. Morse had taken and therefore their class schedule become a bit mismatched. Neither party has treated Mr. Hall's change in class schedule as a breach of the agreement. However, with Mr. Hall's change in class schedule the prior semester, Mr. Hall and Mr. Morse could not again have the same class schedule. Moreover, this August 28, 2005 conversation included Mr. Hall also telling Mr. Noyes that he was not going to do clinicals in the upcoming semester and therefore couldn't coordinate clinicals with Mr. Morse either.

13. Mr. Hall contends that he did not want to start his clinicals until 2006 because he wanted to take a particular class before he started the clinicals. Mr. Noyes requested that Mr. Hall start some of his clinical work in the fall of 2005 and to

3

in some small way coordinate with Mr. Morse. Mr. Hall declined to do so, and a contest of wills then began.

14. The Court is convinced that Mr. Hall did not listen very carefully to Mr. Noyes during the "cemetery conversation" and there was no resolution to the conflict.[3] Mr. Noyes also did not communicate with Mr. Hall in a way that fostered resolution of the conflict. The Court is satisfied that the conversation ended with Mr. Noyes telling Mr. Hall he wanted a copy of his educational schedule.

15. Mr. Hall did not provide Mr. Noyes with a copy of his educational schedule.[4] While Mr. Hall suggested that his class schedule was subject to change, he did not fulfill Mr. Noyes' request for a schedule. Mr. Noyes, as director of the ambulance service, had responsibility to create the ambulance coverage schedule, and Mr. Hall should have made a reasonable effort to responsibly respond to this request.

16. While it may not have made sense to Mr. Hall to provide a schedule to Mr. Noyes at that point, the fact remains that Mr. Hall ignored a straightforward, reasonable request from his superior. This constituted a partial breach of the agreement between the Town and Mr. Hall. *See Downeast Energy Corp. v. RMR*, 1997 ME 148 (when one party breaches, the non-breaching party may, depending on the circumstances, either treat the breach as partial or total).

17. After the partial breach, the Town continued to schedule hours for Mr. Hall to work with the ambulance service. However, Mr. Noyes instructed the Town clerk not to pay Mr. Hall reimbursement for his EMT education until Mr. Hall provided the requested schedule.

18. The next significant event was the November 22, 2005 letter from Mr. Hall to the Town in which he resigned from the Ambulance Service. *See* Plaintiff's Exhibit #10. While Mr. Hall testified that it was not his intent to tender a resignation, the Court is satisfied that the letter did – in fact - tender a resignation. The resignation constituted a total breach of the agreement between Mr. Hall and the Town. *See Downeast Energy Corp. v. RMR*, id.

19. Shortly thereafter, the Town via letter from Mr. Noyes, the director of the Patten Ambulance Service, accepted Mr. Hall's resignation. *See* Plaintiff's Exhibit #11.

20. After the November 22, 2005 resignation, the Town stopped scheduling Mr. Hall to work for the Ambulance Service. Plaintiff's letter indicated that he

---

[3] Even during examination by his attorney, Mr. Hall was persistent in saying what he wanted to say rather than listening to the questions being asked of him.

[4] Plaintiff had provided Mr. Noyes with a class schedule on at least one prior occasion. *See* Plaintiff's Exhibit #7.

4

would work the hours he had been scheduled, which would have been through the end of November, and he was not scheduled for any hours in December. At the time of his resignation, by virtue of the Town's sponsorship of his education through the Intermediate licensure level, Mr. Hall was obligated to remain available to work with the ambulance service until sometime in February of 2006.[5]

21. Thereafter, on December 20, 2005 Mr. Hall wrote to the Town Manager and the Selectman explaining that the intent of his November 22, 2005 letter had not been to tender a resignation. *See* Plaintiff's Exhibit #12.

22. At the January 3, 2006 Board of Selectman meeting, the Board voted to "allow the Ambulance Director to settle this issue to his satisfaction." While Mr. Hall suggests that the Board instructed Mr. Hall and Mr. Noyes to resolve the issue to their mutual satisfaction, the Minutes of the Town meeting do not support this interpretation. *See* Plaintiff's Exhibit #14. The Court finds that Mr. Noyes was given the authority to settle the employment issue with Mr. Hall.

23. Between January 3 and January 17, 2006 Mr. Noyes met with Mr. Hall about the employment issue.

24. On January 17, 2006, pursuant to the vote of the Selectmen that Mr. Noyes resolve the issue with Mr. Hall to his (Mr. Noyes') satisfaction, Mr. Noyes wrote a letter to Mr. Hall setting forth the terms under which Mr. Hall's employment with the Patten Ambulance Service could continue. In particular, Mr. Noyes stated that the Town would make certain payments for certain previously-incurred educational expenses, that the Town's sponsorship of Mr. Hall in the EMT educational program would terminate, and Mr. Hall would "sign a contract guaranteeing to be available to provide Patten Ambulance Service with a cumulative average of 72 hours of on-call time per week for a period of one year beyond his current contractual obligation which expires in February of 2005". *See* Plaintiff's Exhibit #15.

25. On January 24, 2006 Mr. Hall responded in a letter that rejected the terms of Mr. Noyes' January 17, 2006 letter. *See* Plaintiff's Exhibit #16.

26. A few days later, Mr. Noyes unequivocally confirmed with Mr. Hall that his employment and educational sponsorship were terminated.

27. The Court understands Plaintiff's argument that any failure by Mr. Hall to coordinate with Brett Morse should have only impacted his mileage reimbursement, not the Town's entire sponsorship of his education. And, it

---

[5] The Court is satisfied that the breach occurred on November 22, 2005 (when the resignation was tendered), although the parties attempted to resurrect the relationship thereafter. Defendant argued that the employment ended in January, 2006. Even the January, 2006 date was before expiration of Mr. Hall's agreement to make himself available to work for the Ambulance Service through February, 2006.

may have been a fine resolution to the conflict between the Town and Mr. Hall had Mr. Hall suggested in the fall of 2005 that he would not submit mileage requests for some or all of his remaining class and clinical schedule. However, the conflict was not resolved in this fashion. In fact, Mr. Hall never submitted the requested schedule and there was no resolution to the conflict before Mr. Hall resigned from the Ambulance service.

28. The Court does not find that the Town breached its agreement with Mr. Hall as the Town was justified in not reimbursing educational expenses while awaiting Mr. Hall's submission of the requested schedule

29. The precipitating event that led to the termination of the Town sponsoring Mr. Hall's education was Mr. Hall's letter of resignation. In fact, despite Mr. Hall's failure to respond to Mr. Noyes' request for a schedule, Mr. Hall remained scheduled for on-call time with the Ambulance Service through the months between when the dispute arose and when he tendered his resignation.

Mr. Hall's resignation terminated his employment and the Town's sponsorship of his paramedic education. Therefore, judgment is granted to the Defendant on Count I of Plaintiff's Complaint.

A claim for unjust enrichment requires that the plaintiff establish: a) that he conferred a benefit on the defendant; b) that the defendant had appreciation or knowledge of the benefit; and c) the defendant accepted or retained the benefit under circumstances that make it inequitable for it to retain the benefit without payment of its value. Maine Eye Car Assoc. v Gorman, 2008 ME 36.

In this case, Mr. Hall performed work for the Patten Ambulance Service, and he was paid for that work. The Court does not find that Mr. Hall conferred any other benefit on the defendant, and therefore, judgment is granted to the Defendant on Count III of Plaintiff's Complaint.

The Clerk shall enter the following upon the docket:
    Judgment for the Defendant on Counts I and III.

Dated: January 11, 2011
Judgment entered upon the docket on 1/20/11.

_____
JUSTICE, MAINE SUPERIOR COURT

6