STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-16-15 ✔

DUDLEY TRUCKING CO., )
)
      Plaintiffs, )
)
v. )      COMBINED ORDER ON
)      MOTIONS IN LIMINE
BISSON TRANSPORTATION, INC. )
)
      Defendant. )

The Court heard oral argument on Plaintiff's five motions *in limine* and Defendant's four motions *in limine* on February 6, 2018 in Portland, Maine. Plaintiff Dudley Trucking Co. ("Dudley") was represented by Jeffrey Bennett, Esq. and Melissa Donahue, Esq. Stephen Seagal, Esq. appeared for Defendant Bisson Transportation, Inc. ("Bisson"). The Court imposed an expedited deadline to respond to the motions and Dudley and Bisson filed written oppositions to all motions with the Court on February 5, 2018. The Court ruled on the motions from the bench during the hearing and now issues this written Order consistent with those rulings.

**STANDARD OF REVIEW**

The grant of a motion *in limine* is reviewed for an abuse of discretion. *Fitzgerald v. City of Bangor*, 1999 ME 50, ¶ 10, 726 A.2d 1253.

**DISCUSSION**

I.     PLAINTIFF'S MOTIONS *IN LIMINE*

     A.  Plaintiff's First Motion *in Limine*

On July 9, 2014, the parties executed a "Transportation Agreement" with an attached "Exhibit" containing certain origins, destinations, miles, and dollar amounts. (Amended Joint Final

1

Pretrial Statement, Stipulated Fact A.) Dudley's first motion *in limine* sought to preclude Bisson from referring to the exhibit attached to the Transportation Agreement as a "flat rate sheet" on the grounds that this appellation would confuse or mislead the jury. *See* Me. R. Evid. 403.

The Court **denies** Plaintiff's First Motion *in Limine*. The Court rules that Dudley's concerns with Bisson's label for the contract exhibit can be properly dealt with in cross-examination, or in argument.

### A. Plaintiff's Second Motion *in Limine* and Defendant's Motion *in Limine* to Exclude Any Evidence That John Katzianer Stated to Dudley Trucking That Bisson Would Pay Dudley Trucking Eighty Percent of the "Gross Line Haul" or "Line Haul"

The Court heard argument on these two motions in tandem, and discusses both here, because both motions deal with certain out-of-court statements of Mr. John Katzianer, a Bisson employee and expected witness at trial. Dudley asks the Court to make a pretrial ruling that Mr. Katzianer had the authority to bind and act on Bisson's behalf; Bisson asks the Court for an order prohibiting Dudley from introducing any evidence at trial that Mr. Katzianer stated to Dudley that Bisson would pay Dudley eighty percent of the gross line haul in the grounds that it is hearsay.

These motions are two sides of the same coin, and both are premature. Whether Mr. Katzianer was an agent of Bisson and the scope of any agency relationship is a question of fact for the jury to decide. *See Cty. Forest Prods. v. Green Mt. Agency, Inc.*, 2000 ME 161, ¶ 21, 758 A.2d 59. Whether Mr. Katzianer's statements to Dudley are hearsay turns, in part, on whether those statements were made within the scope of Mr. Katzianer's agency relationship with Bisson. *See* M.R. Evid. 801(d)(2)(D). Trial evidence will be required to resolve these issues.

The Court thus **denies** Plaintiff's Second Motion *in Limine* and Defendant's Motion *in Limine* to Exclude Any Evidence That John Katzianer Stated to Dudley Trucking That Bisson Would Pay Dudley Trucking Eighty Percent of the "Gross Line Haul" or "Line Haul."

2

## B. Plaintiff's Third Motion *in Limine*

Plaintiff's Third Motion *in Limine* asks the Court to exclude evidence and argument that the Transportation Agreement is the same form Bisson uses with all of its independent contractors on the grounds that this evidence is irrelevant. *See* M.R. Evid. 401. *See also* M.R. Evid. 402-403. Bisson responds that the evidence is relevant to resolving the ambiguity in the Transportation Agreement and as evidence of Bisson's routine practice. *See* M.R. Evid. 406(a).

The Court agrees with Dudley that the focus of this trial should be on Bisson's contractual relationship with Dudley, and not any of its other independent contractors. Allowing Bisson to introduce evidence of its agreements with other independent contractors would expand the trial beyond the relevant issue; *i.e.*, what these two parties agreed to. The Court therefore **grants** Plaintiff's Third Motion *in Limine*.

## C. Plaintiff's Fourth Motion *in Limine*

Plaintiff's Fourth Motion *in Limine* likewise asks the Court to exclude evidence of Bisson's agreements with other independent contractors; specifically, its agreements with interstate (as compared with intrastate) haulers. Dudley again cites M.R. Evid. 401-403 as the basis for its motion; Bisson again argues that the evidence is relevant to resolving the ambiguity in the Transportation Agreement and as evidence of Bisson's routine practice. *See* M.R. Evid. 406(a).

The ambiguity in this contract essentially boils down to two (potentially inconsistent) provisions regarding Dudley's remuneration for specific hauls or runs. Bisson argues that Dudley's motion would leave it unable to explain why this potential inconsistency is in a contract that Bisson itself drafted: specifically, that intrastate and interstate independent contractors are paid differently by Bisson.

3

The Court **grants** Plaintiff's Fourth Motion *in Limine* **in part** and **denies** the motion **in part**. As in Part I.B. of this Order, *supra*, the Court rules that Bisson may not introduce evidence of its general practices or its specific arrangements with interstate or other intrastate independent contractors. M.R. Evid. 401-402. However, Bisson may suggest that interstate and intrastate independent contractors are paid differently as an explanation for the potential inconsistency in the Transportation Agreement. This evidence can be tested through cross-examination and its weight can be argued to the jury.

### D. Plaintiff's Fifth Motion *in Limine*

Plaintiff's Fifth Motion *in Limine* requests that this Court preclude Bisson from presenting three witnesses at trial who were listed on the Amended Joint Final Pretrial Statement filed with the Court on January 4, 2018. The thrust of Dudley's motion is that Bisson's addition of these three witnesses to the Amended Joint Final Pretrial Statement may be a discovery violation, and in any event prejudices Dudley because it has not had an opportunity to depose these witnesses. *See* M.R. Evid. 26 (a)-(b); 135 (a)-(b). Bisson responds that its naming of these three witnesses is not a violation because it is timely under the Court's scheduling order pertaining to the deadline for the filing of the joint pretrial statement. Bisson further suggests that Dudley has been on notice that these three witnesses were privy to facts germane to this litigation because their names came up in deposition.

At oral argument, the Court inquired of Bisson as to the relevance of these witnesses' expected testimony. Bisson indicated that these witnesses will testify as to the circumstances surrounding the early termination of Dudley's contract without notice, and that such evidence will be relevant to determining whether Dudley's breached the Transportation Agreement thereby excusing Bisson's termination of the contract without notice.

4

The Court **denies** Plaintiff's Fifth Motion *in Limine* because Bisson's listing of the witnesses in the Amended Joint Final Pretrial Statement was timely under the Court's scheduling order. However, the Court **orders** Bisson that it may not address these witnesses or their expected testimony in its opening statement. Dudley will have an opportunity to *voir dire* these witnesses outside the presence of the jury in order for the Court to properly determine whether their testimony is admissible or should be excluded as unduly prejudicial or improper character evidence. *See* M.R. Evid. 403, 404.

II.     DEFENDANT'S MOTIONS *IN LIMINE*

      A. Defendant's Motion *in Limine* to Exclude Any Evidence That John Katzianer Stated to Dudley Trucking That Bisson Would Pay Dudley Trucking Eighty Percent of the "Gross Line Haul" or "Line Haul"

*See* Part I.B. of this Order, *supra*.

      B. Defendant's Motion *in Limine* to Exclude Evidence or Argument in Support of Claim for Punitive Damages

Although there was no formal motion to withdraw this motion, the parties tended to agree at oral argument that Dudley should be afforded the opportunity to present its evidence relating to whether Bisson is liable for an award of punitive damages. Bisson nonetheless maintains that based on what has been alleged and what has been unearthed in discovery Dudley will be unable to satisfy the heightened burden a plaintiff must prove in order to be entitled to an award of punitive damages. *See Tuttle v. Raymond*, 494 A.2d 1353, 1361-62 (Me. 1985).

The Court thus defers judgment on this motion pending the close of evidence in this case. At that time, Bisson may renew its motion and the Court will determine as a matter of law whether Dudley has met its burden to prove by clear and convincing evidence that Bisson acted with malice before allowing Dudley to argue punitive damages to the jury. *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 17, 818 A.2d 995 (citing *Tuttle*, 494 A.2d at 1354).

The Court **orders** Dudley to refrain from addressing the issue of punitive damages in its opening statement or at any other point in the trial pending final decision of this motion.

### C. Defendant's Motion *in Limine* Regarding "Gross Line Haul" and Damages

Bisson's motion *in limine* regarding "gross line haul" and damages asks this Court for an order (1) precluding Dudley from stating in its opening or arguing at trial that $258.00 constituted the "gross line haul;" (2) holding Dudley to its proof with respect to its alleged damages based on each haul performed; and (3) holding Dudley to its proof with respect to its alleged lost profits as a result of termination and requiring Dudley to present credible evidence of its alleged net lost profits. As to (1), Bisson argues that this number is speculative. The remaining two requests are based on Bisson's concern that Dudley will attempt to inflate its damages in its opening statement to the jury.

At oral argument, Dudley claimed that it has a good faith basis for its determination that $258.00 represents the "gross line haul" for the run in question, and knows it to be accurate to a reasonable certainty based on an insurance claim referenced in a Bisson email. However, Dudley agreed to not reference any amounts certain it would be requesting in an award for damages in its opening.

The Court **grants** Defendant's Motion *in Limine* Regarding "Gross Line Haul" and Damages **in part** and **denies** the motion **in part**. Dudley may not reference any specific amounts it will be requesting in damages or the value of the "gross line haul" in its opening statement. At the close of evidence, Bisson may renew its motion on the grounds that Dudley has failed to meet its burden of proof on the issue of damages as to the compensation and termination provisions of the Termination Agreement. The Court will then determine what Dudley will be permitted to argue to the jury regarding its damages, which will be limited to its net losses.

6

D. **Defendant's Motion _in Limine_ to Require Plaintiff to Produce Certain Documents or Things to Defendant Before Trial That It Intends To Use at Trial as Impeachment and/or Rebuttal Evidence**

Bisson's final motion _in limine_ asks the Court for an order requiring Dudley to produce certain documents or things to Bisson before trial that it intends to use at trial as impeachment or rebuttal evidence. This "document or thing" is referenced in the Amended Joint Final Pretrial Statement filed with the Court on January 4, 2018. Dudley claims that they are under no obligation to share the "item" because Bisson never requested it during discovery, it will not use the item in its case in chief, and that it will be used for impeachment only if appropriate.

At oral argument, Dudley suggested that in the event it wishes to use the "item" before the jury, the Court could hold a _voir dire_ hearing outside the presence of the jury for the Court to determine whether the item really is impeachment evidence or instead should have been identified as part of the case in chief. Bisson agreed to this approach but did not formally withdraw its motion.

The Court thus defers judgment on this motion. The Court declines to order Dudley to share this "item" with Bisson prior to trial, but rules that Bisson is entitled to a _voir dire_ hearing to determine whether the item may properly be used for impeachment prior to Dudley's use of the item in the presence of the jury.

## CONCLUSION

Based on the foregoing it is hereby ORDERED:

1. Plaintiff's First Motion _in Limine_ is DENIED.

2. Plaintiff's Second Motion _in Limine_ is DENIED.

3. Plaintiff's Third Motion _in Limine_ is GRANTED.

4. Plaintiff's Fourth Motion _in Limine_ is GRANTED IN PART AND DENIED IN PART. Defendant Bisson may not introduce evidence of its general practices or its specific arrangements with interstate or other intrastate independent contractors. Defendant Bisson

7

may suggest that interstate and intrastate independent contractors are paid differently as an explanation for the potential inconsistency in the Transportation Agreement.

5. Plaintiff's Fifth Motion *in Limine* is DENIED.

6. Defendant's Motion *in Limine* to Exclude Any Evidence That John Katzianer Stated to Dudley Trucking That Bisson Would Pay Dudley Trucking Eighty Percent of the "Gross Line Haul" or "Line Haul" is DENIED.

7. The Court defers judgment on Defendant's Motion *in Limine* to Exclude Evidence or Argument in Support of Claim for Punitive Damages. The Court ORDERS Dudley to refrain from addressing the issue of punitive damages in its opening statement or at any other point in the trial pending final decision of this motion.

8. Defendant's Motion *in Limine* Regarding "Gross Line Haul" and Damages is GRANTED IN PART AND DENIED IN PART. Dudley may not reference any specific amounts it will be requesting in damages or the value of the "gross line haul" in its opening statement. At the close of evidence, Bisson may renew its motion and the Court will then determine what Dudley will be permitted to argue to the jury regarding its damages, which will be limited to its net losses.

9. The Court defers judgment on Defendant's Motion *in Limine* to Require Plaintiff to Produce Certain Documents or Things to Defendant Before Trial That It Intends To Use at Trial as Impeachment and/or Rebuttal Evidence.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Dated: February 6, 2018

Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 2-8-18
Copies sent via Mail ___ Electronically ✓

8

STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-16-15 ✔

DUDLEY TRUCKING CO., )
                     )
         Plaintiff,  )
                     )
    v.               )          ORDER ON PARTIES' MOTIONS
                     )          FOR SUMMARY JUDGMENT
BISSON TRANSPORTATION, INC. )
                     )
         Defendant,  )
                     )

Plaintiff Dudley Trucking Co. and Defendant Bisson Transportation, Inc. have both moved for summary judgment in their respective favor on Plaintiff's breach of contract claim. Defendant has also moved summary judgment on Plaintiff's remaining claims. For the following reasons, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Defendant is a Maine-based trucking company operating throughout the Eastern United States. (Def. Supp'g S.M.F. ¶ 1; Pl. Opp. S.M.F. ¶ 1.) Plaintiff is also trucking company owned by Jamie Dudley (*Id.* ¶ 2.)

On July 9, 2014, Defendant agreed to engage Plaintiff as an independent contractor to provide intrastate hauling services for various shippers. (*Id.* ¶ 3.) The parties executed a written "Transportation Agreement" drafted by Defendant. (Def. Supp'g S.M.F. ¶ 5; Pl. Opp. S.M.F. ¶ 5; Pl. Supp'g S.M.F. ¶¶ 1-2; Def. Opp. S.M.F. ¶¶ 1-2; Joint Final Pretrial Statement, Stipulated Facts ¶ A; Cooper Aff. Ex. 1.) The Transportation Agreement was signed by James Cooper, Defendant's General Manager, and Mr. Dudley. (Def. Supp'g S.M.F. ¶ 6; Pl. Opp. S.M.F. ¶ 6;

1

Cooper Aff. Ex. 1.) Pursuant to the Transportation Agreement, Defendant was to act as an authorized broker between Plaintiff and shippers. (Pl. Supp'g S.M.F. ¶ 4; Def. Opp. S.M.F. ¶ 4.)

That same day, the parties also executed a one-page document containing certain origins, destinations, miles, and dollar amounts (the "Exhibit").[1] (Def. Supp'g S.M.F. ¶ 5; Pl. Opp. S.M.F. ¶ 5; Pl. Supp'g S.M.F. ¶ 14; Def. Opp. S.M.F. ¶ 14; Joint Final Pretrial Statement, Stipulated Facts ¶ A; Cooper Aff. Ex. 1.) The Exhibit was signed by Cooper on behalf of Defendant and Cassey Dudley, the clerk/registered agent for Plaintiff. (Def. Supp'g S.M.F. ¶ 7; Pl. Opp. S.M.F. ¶ 7; Cooper Aff. Ex. 2.) There is no dispute that the Exhibit is an integrated part of the parties' written agreement. (Pl. Supp'g S.M.F. ¶¶ 6, 9; Def. Add'l S.M.F. ¶ 5; Pl. Reply S.M.F. ¶ 5; Def. Supp'g S.M.F. ¶¶ 5, 10; Pl. Opp. S.M.F. ¶¶ 5, 10, Joint Final Pretrial Statement, Stipulated Facts ¶ A; *see* Cooper Aff. Ex. 1 § 10(E) (integration clause).)

Plaintiff performed 2,107 hauls or runs for Defendant.[2] (Def. Add'l S.M.F. ¶ 9; Def. Supp'g S.M.F. ¶ 11; Joint Final Pretrial Statement, Stipulated Facts ¶ C.) One of the hauls or runs performed by Plaintiff was from Jay, Maine to Mechanic Falls, Maine, for which Plaintiff

---

[1] The parties dispute whether the one-page document is an "exhibit" to the contract or an "amendment." Plaintiff refers to the one-page as the "Amendment." (Pl. Supp'g S.M.F. ¶¶ 6, 11, 13-14.) Defendant contends that the one-page document is not an "Amendment" within the meaning of § 2 of the Transportation Agreement because it is not dated. (Def. Opp. S.M.F. ¶¶ 11, 13-14; Def. Opp. to Pl. Mot. Summ. J. 9.) Defendant asserts that one-page document is an "exhibit" to the Agreement and refers to it as the "Compensation Term." (Def. Opp. to Pl. Mot. Summ. J. 8-9; Def. Supp'g S.M.F. ¶ 5.) In their Joint Final Pretrial Statement, the parties stipulate, "On July 9, 2014, the Parties executed a 'Transportation Agreement' and **attached exhibit** containing certain origins, destinations, miles and dollar amounts." (Joint Final Pretrial Statement, Stipulated Facts ¶ A) (emphasis supplied). Thus, the parties have agreed that the one-page document is an "exhibit" and not an "amendment." For the sake of simplicity, the court shall refer to the one-page document as the "Exhibit" to the Transportation Agreement.

[2] In its statements of material facts, Plaintiff contends it actually completed 2,276 hauls or runs on behalf of Defendant. (Pl. Reply S.M.F. ¶ 8; Pl. Opp. S.M.F. ¶ 11.) However, in their Joint Pretrial Statement, the parties stipulate, "Dudley Trucking performed two thousand one hundred seven (2,107) hauls (or runs) on behalf of Bisson." (Joint Final Pretrial Statement, Stipulated Facts ¶ C.) Thus, there is no genuine dispute regarding the number of hauls or runs preformed.

2

was paid $170.00 per run or haul. (Def. Supp'g S.M.F. ¶ 12; Pl. Opp. S.M.F. ¶ 12; Pl. Supp'g S.M.F ¶¶ 12, 27; Def. Opp. S.M.F. ¶¶ 12, 27.) Plaintiff later discovered that total transit cost for the Jay to Mechanic Falls run or haul was $258.00. (Pl. Supp'g S.M.F ¶¶ 20-24.) Plaintiff contends that, based on that transit costs, it should have been paid $206.40 for the Jay to Mechanic Falls run or haul under the Transportation Agreement. (Def. Mot. Summ. J. 2-3 & n.4.)

Plaintiff contends that, on or about December 28, 2015, Mr. and Mrs. Dudley requested a meeting with Cooper to address Plaintiff's compensation. (Pl. Opp. S.M.F. ¶ 22.) At the meeting, Mr. Dudley inquired why Plaintiff was not being paid the full amount required under the Transportation Agreement. (*Id.*) Plaintiff contends that Defendant terminated the Transportation Agreement without notice, effective immediately, in response to Mr. Dudley's question. (*Id.* ¶¶ 22-23; Pl. Supp'g S.M.F. ¶ 29.)

Defendant denies Plaintiff's assertions. (Def. Opp. S.M.F. ¶ 29.) Defendant contends that Mr. Dudley had been involved in several dangerous incidents and safety violations. (Def. Add'l. S.M.F. ¶¶ 13-18; Def. Supp'g S.M.F. ¶¶ 16-21.) Defendant asserts that, in late December 2015, Cooper decided that he had "received too many complaints" and "could not take the safety risk any longer" and informed Mr. Dudley that Defendant "had no more work" for Plaintiff. (Def. Supp'g S.M.F. ¶ 22; Def. Opp. S.M.F. ¶ 29; Def. Add'l S.M.F. ¶ 19.) There is no dispute that the Transportation Agreement was terminated in December 2015, effective immediately, without notice. (Def. Supp'g S.M.F. ¶ 23; Pl. Opp. S.M.F. ¶ 23; Joint Final Pretrial Statement, Stipulated Facts ¶ D.)

On April 11, 2016, Plaintiff filed a six-count complaint in Oxford County Superior Court asserting claims for breach of contract (Count I), unjust enrichment (Count II), *quantum meruit*

3

(Count III), fraud, misrepresentation and deceit (Count IV), conversion (Count V), and for an accounting (Count VI). Defendant filed an answer on April 20, 2016. This case was subsequently transferred to the Business and Consumer Docket. A Joint Final Pretrial Statement setting forth stipulated facts was filed on April 10, 2017. Both parties filed their respective motions for summary judgment on June 2, 2017, their oppositions on June 23, 2017, and their replies on July 5, 2017. Oral argument on both motions was held on August 10, 2017.

## STANDARD OF REVIEW

Either party may move for summary judgment on all or part of a claim. M.R. Civ. P. 56 (a)-(b). Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021; M.R. Civ. P. 56(c). When a defendant moves for summary judgment on a plaintiff's claim and the motion is properly supported, the burden shifts to the plaintiff to respond with specific facts establishing a prima facie case for each element of the claim challenged by the defendant. *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234. When a plaintiff moves for summary judgment on its claims, the plaintiff must establish each element of its claims

4

without dispute as to any material fact in the record. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015. If the plaintiff's motion is properly supported, the burden shifts to the defendant to respond with specific facts indicating a genuine issue for trial. M.R. Civ. P. 56(c). In either case, if the non-moving party fails to present sufficient evidence of a genuine issue of material fact regarding an element, the moving party is entitled to a summary judgment. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. "Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*." *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 19, 116 A.3d 466 (internal citation and quotation marks omitted). Even if one party's version of the facts appears more credible and persuasive, any genuine issue of material fact must be resolved by the fact finder, regardless of the likelihood of success. *Estate of Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732.

## ANALYSIS

### I. Breach of Contract

To prevail on a breach of contract claim, the plaintiff must establish: (1) the parties had a legally binding contract; (2) the defendant breached a material term of the contract; and (3) defendant's breach caused the plaintiff to suffer damages. *Tobin v. Barter*, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088. The interpretation of an unambiguous contract is a question of law for the court. *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me. 1996). However, if a contract is ambiguous, then its interpretation is a question of fact. *Thayer Corp.*, 675 A.2d at 516. The determination of whether a contract is ambiguous is a question of law for the court. *Id.* "Contract language is ambiguous when it is reasonably susceptible to different interpretations." *Id.* (internal quotation omitted). If the contract is unambiguous, the court shall give its terms their plain, ordinary, and generally accepted meaning. *Villas by the Sea Owners Ass'n v.*

5

*Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457. If a contract is ambiguous, however, the court may consider extrinsic evidence to determine the parties' intent. *Garrity*, 2000 ME 48, ¶ 10, 748 A.2d 457. If a contract is ambiguous and there are genuine issues of material fact regarding the intent of the parties, summary judgment is inappropriate. *Thayer Corp.*, 675 A.2d at 516.

There is no dispute the Transportation Agreement and attached Exhibit constitute a legally binding contract between the parties. (Pl. Supp'g S.M.F. ¶¶ 1, 8, 14; Def. Opp. S.M.F. ¶¶ 1, 14; Def. Supp'g S.M.F. ¶¶ 5 10; Pl. Opp. S.M.F. ¶¶ 5, 10; Joint Final Pretrial Statement, Stipulated Facts ¶ A.) Plaintiff contends that Defendant breached both the compensation and termination provisions of the Transportation Agreement. (Pl. Mot. Summ. J. 4; Pl. Opp'n to Def. Mot. Summ. J. 6-8.)

A.     Compensation Provisions

Both parties contend that Transportation Agreement and attached Exhibit are unambiguous. (Pl. Mot. Summ. J. 4; Def. Mot. Summ. J. 7.) Plaintiff asserts that the plain language of the Transportation Agreement's compensation provision required Defendant to pay Plaintiff 80% of the "gross haul line," and that Defendant breached the compensation provision by paying Plaintiff an amount less than the agreed percentage. (Pl. Mot. Summ. J. 4-5; Pl. Opp'n to Def. Mot. Summ. J. 7-8.) Defendant, on the other hand, contends that the plain language of the attached Exhibit stated that Plaintiff would be paid a set amount of $170.00 "for each completed run" from Jay to Mechanic Falls, without regard to a percentage or "gross line haul." (Def. Mot. Summ. J. 7-8; Def. Opp'n to Pl. Mot. Summ. J. 8.) Plaintiff contends Defendant was compensated accordingly. (Def. Mot. Summ. J. 8; Def. Opp'n to Pl. Mot. Summ. J. 9-10.)

Section 2 of the Transportation Agreement provides:

Compensation. As compensation for transportation services arranged by Bisson Transportation and provided by Carrier pursuant to this Agreement, Bisson

6

Transportation shall pay Carrier in accordance with the set amount of 80% of the gross line haul. This amendment is set forth in writing and authorized representatives of both Bisson Transportation and the Carrier sign and date such amendment.

(Cooper Aff. Ex. 1 § 2.) The Exhibit to the Transportation Agreement lists various origins, destinations, miles, and "OA Pay." (Cooper Aff. Ex. 2.) Regarding the Jay to Mechanic Falls run at issue in this case, the Exhibit provides:

| ORIGIN | DESTINATION | MILES | OA PAY |
|--------|-------------|-------|--------|
| ... | | | |
| JAY | M FALLS | 35 | $ 170.00 |
| ... | | | |

(*Id.* Ex. 2.)

Based solely on the fours corners of the documents, the court finds Transportation Agreement and attached Exhibit to be ambiguous regarding Plaintiff's compensation. The court cannot determine the meaning of "set amount of 80% of the gross line haul" in § 2. The Transportation Agreement does not define "gross line haul" and the court cannot ascertain its meaning from the plain language. In it is unclear whether the parties intended Plaintiff's compensation to be a fixed amount or a variable amount based on a set percentage. The second sentence of § 2 is equally abstruse. The sentence begins by referring to "This amendment", but it is unclear what "amendment" the sentence is referring to or how it relates to Plaintiff's compensation under § 2. Nothing in the preceding sentence discusses an amendment to the Transportation Agreement.

The attached Exhibit is also ambiguous. The Exhibit does not reference any provisions of the Transportation Agreement or state its purposes. The Exhibit simply lists origins, destinations, miles, and an amount of "OA Pay." Neither the Exhibit nor the Transportation Agreement defines "OA Pay." The court cannot determine from the plain language whether

7

"OA Pay" is a fixed amount of compensation, the "gross line haul," an amount equal to 80% of the "gross line haul," or whether it is related to Plaintiff's compensation at all. Therefore, the court finds the Transportation Agreement's compensation provision and attached Exhibit to be ambiguous.

Although the compensation provision and Exhibit are facially ambiguous, based on the parties' statements of material fact, there is no genuine dispute of fact regarding Plaintiff's agreed-upon compensation. Throughout its statements of material fact, Plaintiff refers to the Exhibit as the "Amendment." (Pl. Supp'g S.M.F. ¶¶ 11, 13-14.) Plaintiff avers, "The Contract provides that a set amount equal to eighty percent (80%) of the gross line haul is set forth in a written amendment to the Contract…" (*Id.* ¶ 6.) Plaintiff states, "The Amendment contains the trucking routes and rates of pay and is signed by both parties." (*Id.* ¶ 16.) Plaintiff further states that, "The Amendment provides that **Plaintiff was to be paid at a rate of One Hundred Seventy Dollars ($170.00)** per line haul for hauls originating in Jay, ME and ending in Mechanic Falls, ME." (*Id.* ¶ 11) (emphasis supplied). Defendant asserts that the Exhibit did not call for Plaintiff to be paid on a "per line haul" basis. (Def. Opp. S.M.F. ¶¶ 11.) However, Defendant does not dispute that, pursuant to the Exhibit, Plaintiff was to be paid a rate of $170.00 for the Jay to Mechanic Falls route. (*Id.*)

Thus, regardless of whether the amount stated in the Exhibit was supposed to be equal to eighty percent (80%) of the gross line haul or a set amount without regard to a percentage or the "gross line haul," there is no dispute that the parties agreed that Plaintiff would be paid $170.00 for each completed run or haul from Jay to Mechanic Falls. Moreover, there is no dispute that Plaintiff was in fact paid $170.00 for each completed haul or run from Jay to Mechanic Falls in accordance with the attached Exhibit. (Pl. Supp'g S.M.F. ¶¶ 12, 27; Def. Opp. S.M.F. ¶¶ 12, 27;

8

Def. Add'l S.M.F. ¶ 9; Pl. Reply. S.M.F. ¶ 9; Def. Supp'g S.M.F. ¶ 12; Pl. Opp. S.M.F. ¶ 12;

Joint Final Pretrial Statement, Stipulated Facts ¶ C.) Because Plaintiff was fully compensated in

accordance with the parties' agreement, Defendant is entitled to summary judgment in its favor

on Plaintiff's breach of contract claim with respect to the compensation provisions.[3]

     B.    Termination of the Agreement

Plaintiff contends that the plain language of the Transportation Agreement's termination

provision required Defendant to provide thirty days written notice prior to terminating the

agreement. (Pl. Mot. Summ. J. 5; Pl. Opp'n to Def. Mot. Summ. J. 11-12.) Plaintiff asserts

Defendant breached the termination provision by failing to provide the requisite thirty-day

written notice. (*Id.*) Defendant asserts that, under plain language of the provision, the thirty-day

written notice requirement only applied to termination without cause. (Def. Mot. Summ. J. 9;

Def. Opp'n to Pl. Mot. Summ. J. 11.) Defendant asserts that it was entitled terminate the

Transportation Agreement for cause, effective immediately, without thirty days written notice.

(Def. Mot. Summ. J. 9; Def. Opp'n to Pl. Mot. Summ. J. 11-12.) Defendant also asserts that,

even if it was required to provide thirty-days written notice, there is no remedy available to

Plaintiff for the alleged breach. (Def. Mot. Summ. J. 10; Def. Opp'n to Pl. Mot. Summ. J. 12.)

---

[3] Plaintiff asserts that, prior to signing the Transportation Agreement, Defendant represented that the dollar amounts stated in the Exhibit were equal to 80% of the gross line haul. (Pl. Supp'g S.M.F. ¶ 17.) Plaintiff contends that it later discovered that $170.00 was less than 80% of the gross line haul for the Jay to Mechanic Falls run. (*Id.* ¶¶ 20-24; Pl. Mot. Summ. J. 2-3 & n.4.) These assertions do not alter the fact that there is no dispute the parties signed the attached Exhibit and agreed that Plaintiff would paid $170.00 for each completed run or haul from Jay to Mechanic Falls. Whether Plaintiff has a claim for fraudulent misrepresentation against Defendant is a separate issue discussed below.

*1. Written notice of termination and material breach of the contract*

Section 3 of the Transportation Agreement states:

Term. The term of this Agreement shall be for an initial period of one (1) year commencing on the date this Agreement is fully executed, and from year to year thereafter, subject to the right of termination by either party at any time without cause of liability upon thirty (30) days prior written notice to the other party. Such termination shall not release either party form any liability or obligation existing or accrued at, or prior to the date of termination.

(Cooper Aff. Ex. 1 § 3.)

Unlike the compensation provisions, the court finds the Transportation Agreement's termination provision to be unambiguous. Section 3 of the Transportation Agreement clearly states that, after the first year, either party may terminate the contract at any time "without cause of liability upon thirty (30) days prior written notice." (*Id.*) Under the plain language, cause is simply not a requirement of termination. Either party may terminate the Transportation Agreement upon thirty days written notice for any reason, no cause required. Defendant's proffered interpretation, that it may terminate the Agreement for cause immediately, without notice, inserts an additional provision into the contract that is simply not there. The plain language contains no terms regarding termination for cause. Therefore, pursuant to the plain and unambiguous terms of the Transportation Agreement, Defendant was required to give thirty days written notice prior to termination of the Agreement with or without cause.

However, Defendant's asserted "cause" for terminating the Transportation Agreement is that Plaintiff committed a material breach of § 1(C) of the Agreement. (Def. Opp'n to Pl. Mot. Summ. J. 11-12; Def. Mot. Summ. J. 9-10.) A material breach of contract "is a non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1 (internal quotation and citation omitted). Thus, if Plaintiff materially breached the terms of the

10

Transportation Agreement, the Agreement would be regarded as over and Defendant would be relieved compliance the thirty-day notice requirement. "Whether a material breach has occurred is a question of fact. *Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 13, 776 A.2d 1229.

Section 1(C) provides in relevant part, "Carrier shall comply with all applicable laws, ordinances, codes, rules and regulations in performing the services called for in this Agreement." (Cooper Aff. Ex. 1 § 1(C).) Defendant contends that Mr. Dudley breached § 1(C) by being involved in several dangerous incidents and committing safety violations. (Def. Opp'n to Pl. Mot. Summ. J. 11-12; Def. Mot. Summ. J. 9-10.) Defendant asserts the Mr. Dudley was involved in the following incidents: (1) in March 2015, Mr. Dudley was banned from certain New England Public Warehouse ("NEPW") facilities for lowering another contractor's landing gear to the ground; (2) in the summer of 2015, one of Defendant's yard service drivers in Jay, Maine complained that Mr. Dudley had "berated" him; (3) in December of 2015, Defendant's yard service supervisor in Jay, Maine reported that Mr. Dudley almost ran over him with his truck; (4) as a result, Defendant instructed Mr. Dudley not to return personally to the Jay facility, which Mr. Dudley disobeyed by returning to the Jay facility the next weekend; and (5) in late December 2015, Mr. Dudley had threatened to vandalize another contractor's truck. (Def. Add'l. S.M.F. ¶¶ 13-18; Def. Supp'g S.M.F. ¶¶ 16-21.) Defendant has not identified which specific laws, ordinances, codes, rules or regulations Mr. Dudley violated in these incidents.

Plaintiff contends the alleged incidents and safety violations are false and inflated. (Pl. Reply S.M.F. ¶¶ 13-18.) First, Plaintiff does not deny there was an incident between Mr. Dudley another contractor at a NEPW facility in March of 2015. (Pl. Reply S.M.F. ¶ 13; Pl. Opp. S.M.F. ¶ 16.) Plaintiff contends that Defendant instructed Mr. Dudley to work things out with NEPW, that Mr. and Mrs. Dudley met with NEPW's management a week later, and that the matter was

11

resolved. (*Id.*) Second, regarding the incident with Defendant's yard service driver, Plaintiff contends that the yard service driver had blocked Mr. Dudley's truck with another truck, that the driver was unwilling to move, and that Mr. Dudley contacted security at the facility to handle the matter. (Pl. Reply S.M.F. ¶ 14.) Third, regarding the incident with Defendant's yard service supervisor, Plaintiff contends that the supervisor was standing in Mr. Dudley's blind spot, that Mr. Dudley was not aware of the supervisor and had no opportunity to observe him, and that the supervisor was not touched or injured by Mr. Dudley's trailer. (Pl. Reply S.M.F. ¶ 15; Pl. Opp. S.M.F. ¶ 18.) Fourth, Plaintiff concedes Mr. Dudley was asked not to personally return to the Jay facility. (Pl. Reply S.M.F. ¶ 16; Pl. Opp. S.M.F. ¶ 19.) However, Plaintiff contends that Mr. Dudley told Defendant he could not guarantee he would not return if circumstances required him to do so, that Defendant said they would "cross that bridge when they got to it", that Mr. Dudley made a conscious effort to stay away from the Jay facility, but that a shortage of drivers required him to return to the Jay facility, and that he informed Defendant's Senior Safety Manager, who did not object. (Pl. Reply S.M.F. ¶ 17; Pl. Opp. S.M.F. ¶ 20.) Lastly, Mr. Dudley denies ever threatening to vandalize another contractor's truck. (Pl. Reply S.M.F. ¶ 21.) Plaintiff contends Defendant's Safety Manager had virtually no involvement in any of the alleged incidents and Defendant never investigated or made a written record of any of the incidents. (Pl. Add'l S.M.F. ¶¶ 4, 6-7, 11-12, 15-17.)

Although Defendant was required by the plain terms of the Transportation Agreement to provide thirty days written notice prior to termination of the Agreement, based on the foregoing, there are genuine issues of material fact regarding whether Plaintiff materially breached the Transportation Agreement, relieving Defendant of compliance with the notice requirement. There are genuine issues of fact regarding the alleged incidents involving Mr. Dudley and

12

whether those incidents constitute a violation of applicable laws, ordinances, codes, rules or regulations in breach of the Transportation Agreement.

### 2. *Remedy for breach of the notice requirement*

Alternatively, Defendant contends, even if it was required to provide thirty-days written notice, there is no remedy available to Plaintiff for the alleged breach. (Def. Mot. Summ. J. 10-11; Def. Opp'n to Pl. Mot. Summ. J. 12-13.) Defendant asserts that § 1(E) of the Transportation Agreement only required that an independent contractor be provided no less than one shipment in interstate commerce per twelve-month period. (*Id.*; Cooper Aff. Ex. 1 § 1(E).) There is no dispute that Plaintiff was licensed only to haul shipments intrastate. (Def. Add'l S.M.F. ¶ 4; Pl. Reply S.M.F. ¶ 4; Def. Supp'g S.M.F. ¶ 4; Def. Opp. S.M.F. ¶ 4; Joint Final Pretrial Statement, Stipulated Facts ¶ E.) Thus, according to Defendant, it was not required to provide Plaintiff with any intrastate hauls and Plaintiff's damages for failure to provide thirty days written notice prior to termination would be purely conjecture. (Def. Mot. Summ. J. 10-11; Def. Opp'n to Pl. Mot. Summ. J. 12-13.)

The assessment of damages is a question of fact within the sole province of the fact finder. *Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417. Damages are not recoverable when uncertain, contingent, speculative, or based wholly on surmise and conjecture. *Id.* However, reasonableness, not mathematical certainty, is the criteria for determining whether damages are appropriate. *Id.* The fact finder may rely on probable and inferential proof and may make intelligible and probable estimates of the damages suffered based on all relevant facts and circumstances. *Id.*

Although the Transportation Agreement did not require Defendant provide Plaintiff with a minimum number of intrastate hauls or runs, Defendant has not put forth any facts

13

demonstrating that Plaintiff's damages would be uncertain and speculative. *See* (Def. Add'l S.M.F.; Def. Supp'g S.M.F.) Plaintiff is entitled to damages if it can produce any relevant evidence upon which the fact finder can make intelligible and probable estimates of the damages suffered as a result of Defendant's termination of the Agreement without notice. Because Defendant has failed to put forth any facts demonstrating that damages would be uncertain or speculative, Defendant is not entitled to summary judgment for lack of an available remedy.

Accordingly, because there are genuine issues of fact regarding whether Plaintiff materially breached the Transportation Agreement and damages, neither party is entitled to summary judgment with respect to Plaintiff's claim for breach of the termination provision.

## II.   Plaintiff's Remaining Claims

Defendant has also moved for summary judgment on Plaintiff remaining claims for unjust enrichment, *quantum meruit*, fraud, misrepresentation and deciet, conversion, and for an accounting. (Def. Mot. Summ. J. 11.) Defendant contends Plaintiff's remaining claims are based entirely on Plaintiff's assertion that it should been paid 80% of the gross line haul and summary judgment should be granted for the same reasons as Plaintiff's breach of contract claim. (*Id.*) Plaintiff asserts, as it did regarding its breach of contract claim, that Defendant was obligated by the terms of the Transportation Agreement to pay Plaintiff 80% of the gross line haul. (Pl. Opp'n to Def. Mot. Summ. J. 12.)

### A.   Unjust Enrichment and *Quantum Meruit*

Unjust enrichment is an equitable remedy that permits plaintiff to recover the value of a benefit retained by the defendant where no contractual relationship exists. *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me. 1994). To sustain a claim of unjust enrichment, the plaintiff must establish: (1) it conferred a benefit upon the defendant, (2) the

14

defendant had an appreciation or knowledge of the benefit, and (3) under the circumstances, it would inequitable for the defendant to retain the benefit without payment of its value to the plaintiff. *Id.* at 1144.

Under a claim of *quantum meruit*, a plaintiff may recovery the value of services or materials rendered to a defendant under an implied contract. *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269. A *quantum meruit* claim is available to a plaintiff when the formal elements of an express contract are not met. *Id.* ¶ 9. Thus, the existence of an express contract generally precludes recovery under a *quantum meruit* claim, particularly when a party has fully preformed its obligations under an express contract. Horton & McGehee, *Maine Civil Remedies* § 11-1 at 229, § 11-2(a)(2) at 234 (4th ed. 2004).

As discussed above, there is no dispute the Transportation Agreement and attach Exhibit constituted a legally binding contract between the parties. (Pl. Supp'g S.M.F. ¶¶ 1, 6, 14; Def. Opp. S.M.F. ¶¶ 1, 14; Def. Supp'g S.M.F. ¶¶ 5, 10; Pl. Opp. S.M.F. ¶¶ 5, 10; Joint Final Pretrial Statement, Stipulated Facts ¶ A.) The parties agreed that Plaintiff would be paid $ 170.00 for each completed run or haul from Jay to Mechanic Falls. (Pl. Supp'g S.M.F. ¶ 11, 16; Def. Opp. S.M.F. ¶¶ 11, 16.) Plaintiff was in fact paid $170.00 for each completed haul or run. (Pl. Supp'g S.M.F. ¶¶ 12, 27; Def. Opp. S.M.F. ¶¶ 12, 27; Def. Add'l S.M.F. ¶ 9; Pl. Reply. S.M.F. ¶ 9; Def. Supp'g S.M.F. ¶ 12; Pl. Opp. S.M.F. ¶ 12; Joint Final Pretrial Statement, Stipulated Facts ¶ C.) Because Plaintiff was fully compensated in accordance with the terms of the Transportation Agreement and Exhibit, Plaintiff is not entitled to recovery for unjust enrichment or *quantum meruit*. Defendant is entitled to summary judgment on those claims.

15

B.   Fraud, Misrepresentation, and Deceit

To sustain a claim of fraudulent misrepresentation, the plaintiff must produce clear and convincing evidence that (1) the defendant a made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of its truth or falsity; (4) for the purpose of inducing the plaintiff to act in reliance upon it; and (5) the plaintiff justifiably relied upon the fact as true to their detriment. *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 12, 942 A.2d 707.

In its statement of material facts in support of its own motion, Plaintiff contends that, prior to signing the Transportation Agreement, "Defendant represented to Plaintiff that the amounts stated in the [Exhibit] were equal to eighty percent (80%) of the line haul." (Pl. Supp'g S.M.F. ¶ 17.) Plaintiff contends that on August 21, 2015, a shipper submitted a Loss and Damage Claim Report to Defendant for lost or damaged cargo transported by Plaintiff. (*Id.* ¶¶ 21-22.) Plaintiff contends that Loss and Damage Claim Report and Defendant's Load Sheet for that haul stated that the transit cost for that haul was $258.00. (*Id.* ¶¶ 23-24.) Plaintiff was paid $170.00 for that particular haul in accordance with the Exhibit. (*Id.* ¶ 26.) Plaintiff contends, based on that transit costs, it should have been paid $206.40 as 80% of the gross line haul ($258.00 x .80). (Def. Mot. Summ. J. 2 & n.4.) Defendant does not dispute Plaintiff's assertions regarding the transit cost of the lost shipment, only that Loss and Damage Claim Report does not reference a "line haul." (Def. Opp. S.M.F. ¶¶ 21-24.) Defendant denies ever representing to Plaintiff that the dollar amounts stated in the Exhibit were equal to 80% of the gross line haul. (*Id.* ¶ 17.)

Based on the foregoing, there is a genuine dispute of fact whether Defendant made a false representation of a material fact regarding the amounts in the set forth in the Exhibit. Because

16

Defendant has not made any specific arguments regarding Plaintiff's inducement, justifiable reliance, or any other elements of fraudulent misrepresentation, the court finds this dispute of fact sufficient to deny Defendant's motion summary with respect to Plaintiff's claim for fraudulent misrepresentation.

C.  Conversion

Conversion is the invasion of another party's possession or right to possession of property at the time of the alleged conversion. *Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 14, 157 A.3d 769. The necessary elements of conversion are (1) the person claiming their property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder. *Id.*

In its complaint, Plaintiff contends that it had a right to immediate possession of all the money earned under the Transportation Agreement and that Defendant committed conversion by failing to pay the full amount. (Compl. ¶¶ 63-67.) As discussed above, the Transportation Agreement and attach Exhibit constituted a legally binding contract between the parties. (Pl. Supp'g S.M.F. ¶¶ 1, 6, 14; Def. Opp. S.M.F. ¶¶ 1, 14; Def. Supp'g S.M.F. ¶¶ 5, 10, Pl. Opp. S.M.F. ¶¶ 5, 10; Joint Final Pretrial Statement, Stipulated Facts ¶ A.) The parties agreed that Plaintiff would be paid $ 170.00 for each completed run or haul from Jay to Mechanic Falls, which Plaintiff was in fact paid. (Pl. Supp'g S.M.F. ¶¶ 11-12, 16, 27; Def. Opp. S.M.F. ¶¶ 11-12, 16, 27; Def. Add'l S.M.F. ¶ 9; Pl. Reply. S.M.F. ¶ 9; Def. Supp'g S.M.F. ¶ 12; Pl. Opp. S.M.F. ¶ 12; Joint Final Pretrial Statement, Stipulated Facts ¶ C.) Because Plaintiff was paid all it was owed under the Transportation Agreement and Exhibit, Plaintiff did not have a property

17

interest or right to possession in the alleged unpaid funds. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim for conversion.

D.    Plaintiff's Claim for an Accounting

An accounting is a restitutionary remedy, not a cause of action, used to establish the amount of liability. Horton & McGehee, *Maine Civil Remedies* § 8-1 at 199. The mere fact that an accounting is demanded does not necessarily mean it is an appropriate remedy. *Id.* § 8-2 at 200. Whether an accounting is an appropriate remedy is a question for the court. *Id.* Generally, an accounting will be awarded in following circumstances: (1) where a fiduciary relationship exists between the parties and the defendant owes a duty to account; (2) where the parties have "mutual accounts," meaning each has charges against the other that will off-set each other to produce a net debt one way or the other; (3) where the account is so complicated that it is beyond the court's or jury's ability to decide; (4) where the defendant has misappropriated money or property belonging to the plaintiff and an accounting is necessary to trace the misappropriated money or property and to determine if the misappropriate funds or property has yielded profits; (5) where specifically provided by statute; or (6) any other case in which an accounting is necessary in order to provide complete relief. *Id.* § 8-2 at 200-02.

In its complaint, Plaintiff seeks an accounting for only its claim that Defendant breached the Transportation Agreement by failing to pay Plaintiff 80% of the gross line haul. (Compl. ¶¶ 68-73.) Because Plaintiff was fully compensated under the terms of the Transportation Agreement and attached Exhibit, Plaintiff is not entitled to an accounting for that claim. Moreover, none of Plaintiff's remaining claims present circumstances requiring an accounting. Therefore, Defendant is entitled to summary judgment on Plaintiff's request for an accounting.

18

## CONCLUSION

Based on the foregoing, the court's entry is as follows:

(1) Plaintiff Dudley Trucking Co.'s motion for summary judgment on its breach of contract claim is **DENIED**.

(2) Defendant Bisson Transportation, Inc.'s motion for summary judgment on all claims is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion is **GRANTED** on Count I with respect to Plaintiff's claim for breach of the compensation provisions and on Counts II, III, V, and VI. Defendant's motion is **DENIED** on Count I with respect to Plaintiff's claim for breach of the termination provision and on Count IV.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 8/16/17

Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 8-16-17
Copies sent via Mail __ Electronically ✓

19

**Dudley Trucking Co. v. Bisson Transportation, Inc.**

**BCD-CV-2016-15**


Dudley Trucking Co.

Jeffrey Bennet, Esq.
198 Maine Mall Rd
Box 15
South Portland, ME 04106


Bisson Transportation, Inc.

Stephen Segal, Esq.
One Portland Square
Po Box 586
Portland, ME 04112
and
Thomas Newman
75 Pearl Street
Po Box 9785
Portland, ME 04104