THE HINCKS COAL COMPANY

*vs.*

CHARLES H. MILAN AND FRANK H. TOOLE.

Penobscot. Opinion, March 17, 1936.

*William S. Cole*, for plaintiff.
*Michael Pilot*,
*E. Donald Finnegan*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J. This is an action on the case, to charge a conspiracy over a period of fourteen years to defraud the plaintiff of great quantities of fuel coal, and for damages.

Frank H. Toole confessed guilt, and default was entered against him before trial.

In the preliminary proceedings Ralph O. Brewster testified that he called to his office defendant Milan, stated to him there were irregularities at the Hincks Coal Company in connection with the deliveries of coal which seemed to involve him, as well as Frank Toole ; that Milan said, "I have been getting my coal there for some time, from year to year, without paying for it." " . . . you let me know how much it is and I will fix it up."

Some coal was paid for, but the total value, at minimum prices, of coal claimed to have been delivered to Milan and not paid for is set out as $41,110.25.

Defendant Toole, in his affidavit of November 14, 1934, stated that he had at various times directed the delivery of loads of coal to Milan, and that such loads were not charged to him ; that Milan would give him $5.00 or $10.00 at a time.

Upon stipulation and agreement of the parties the case was heard by a Justice of the Superior Court without the intervention of a jury and with rights of exceptions reserved to both parties. When the plaintiff rested, the defendant declined to introduce evidence.

The writ alleged that the two defendants entered into a conspiracy to defraud and did defraud the plaintiff, over a period of fourteen years, of a quantity of coal as valued above.

Defendant Milan pleaded the general issue with a brief statement denying all the allegations in the plaintiff's writ, and the plaintiff perfected a bill of exceptions.

The first exception is to the exclusion of hearsay evidence and is of no effect.

In the findings the Justice below held as follows: "The inference may fairly be drawn from the testimony that the defendants entered into a conspiracy to defraud the plaintiff. Plaintiff, however, produces no evidence from which the amount of its damage can be even approximately ascertained. An attempt to fix the correct amount under evidence in this case would be futile. Damages cannot be assessed by guess or mere conjecture, under the evidence the plaintiff is entitled to recover nominal damages only. Entry may be 'Judgment for Plaintiff for One Dollar ($1.00).'"

Exceptions to this judgment present the matter for consideration.

From the record we learn that during the period covered, the defendant Milan was receiving plaintiff's coal at his home, three buildings on Pickering Square, the St. James, the Bangor Exchange, the Spa, and the Cuddy Building, in the City of Bangor, and during all this time it was the business and duty of defendant Toole to direct teamsters and truckmen in plaintiff's employ, at its coal yards, to load and deliver coal in the regular retail trade. It was the duty of Toole to furnish plaintiff a charge slip against each buyer showing date of delivery, kind and quantity of coal delivered and the testimony is that in the main such sales slips were not delivered by Toole on coal furnished Milan.

Witnesses were presented as follows. Perley B. Howard (in charge of one coal yard for ten years) was asked by the Court:

"Q. Did you personally accompany deliveries (of coal to defendant's tenements) in 1934?
A. I have . . . .
Q. That you personally saw delivered?
A. Well, I have been in the bins where it has been delivered.

Q. No! That you personally saw—saw going into the bins?

A. Well, do you want each place definitely?

Q. Yes.

A. The High Street, somewheres around ... I have personally been with him . . . right around twenty-five ton; and the Corner Spa . . . I was with him . . . fifteen; St. James, around fifteen; Main Street, around ten, . . . the first house on Main Street, . . . I don't know the numbers of the houses, . . . next to the filling station, and the second one on Main Street, second below the filling station, on the corner of Main, ten ton; I have personally been with him."

Here is evidence of delivery to defendant Milan of a minimum of seventy-five tons.

Earle W. Ames, for twelve years employed by plaintiff in delivering coal, was asked and answered as follows:

"Q. Do you know how much was delivered any specific time?

A. At one time yes; we would haul . . . it would be between twenty-five hundred and a ton and a half a load.

Q. That would be a load?

A. Yes.

Q. How many loads would you haul that size?

A. Usually there would be three single teams when I would haul and we would all have that amount on."

From this witness we have testimony of a minimum of three and three-fourths tons.

Frank L. Sargent, delivery man, as follows:

"Q. Did you see any other teams or trucks?

A. Yes, sir.

Q. Of the Hincks Coal Company delivering at the same places?

A. Yes, sir.

Q. How much would you deliver at a load?

A. When I drove my team I would haul two tons and one-half, and three tons.

Q. Other teams, what would they haul?

A. Single teams haul a ton, ton and a half sometimes.

Q. Where did you deliver it to?

A. I delivered it to High Street, St. James, Haymarket Square, and down on Main Street," thus establishing a minimum of ten tons.

Herbert S. Davis, another delivery man during the period charged:

"Q. Did you ever deliver any coal to the defendant, Milan?

A. Yes, sir.

Q. Where?

A. High Street, and at the St. James, and Corner Spa, and the two Main Street places . . . .

Q. Do you know how much you personally hauled?

A. About three tons to a load."

furnishing evidence of minimum delivery as alleged of fifteen tons.

We think it established beyond question that a conspiracy existed, with consequent overt act; that it was error to conclude there was no evidence justifying more than "nominal damages only."

That damages can not be assessed by guess or mere conjecture is indubitably true, but exceptions reserved to other than this of the findings must be sustained.

Granting that upon the record approximately full damages can not be computed, it should not have been held that nominal damages only are recoverable.

*Exceptions sustained, on damages only.*