STATE OF MAINE                          BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. BCD-CIV-2022-00058


MYSTIQUE WAY, LLC,                )
                                  )
            Plaintiff,            )
                                  )
                                  )
                                  )
      v.                          )     ORDER ON PLAINTIFF'S
                                  )     MOTION FOR ATTACHMENT
                                  )     AND ATTACHMENT OF
TWISTED RIVER HOLDINGS, LLC,      )     TRUSTEE PROCESS
and MATTHEW HISEY,                )
                                  )
            Defendants.           )


## OVERVIEW

Plaintiff Mystique Way, LLC ("Mystique" or "Plaintiff") filed a three-count complaint

against Twisted River Holdings, LLC ("TRH") and Matthew Hisey ("Hisey") (collectively, the

"Defendants"), on July 20, 2022. The case involves a commercial lease agreement, which

Mystique claims the Defendants breached.[1] In its answer of November 4, 2022, TRH

counterclaimed for breach of contract or lost profits. (Defs.' Countercl. ¶¶ 6-14.) Before the court

is Mystique's Motion for Attachment and Attachment on Trustee Process pursuant to Maine Rules

of Civil Procedure 4A and 4B, filed November 9, 2022, which seeks attachment in the amount of

$236,319.42 (the "Motion"). The court held a hearing on the motion on January 4, 2023. For the

foregoing reasons, the Motion is GRANTED in the amount of $26,340.00.

## FACTUAL ALLEGATIONS

The following facts are drawn from Mystique's filings, including the complaint, motion,

---

[1] Count I is for breach of contract and is made against Twisted River Holdings, LLC; Count II is for breach of guaranty and is made against Matthew Hisey; Count III for unjust enrichment is made against Twisted River Holdings, LLC and Matthew Hisey jointly. (Compl. ¶¶ 32-38.)

1

reply, and attachments thereto:

Mystique is a Maine limited liability company with a principal place of business in Auburn, Maine, and is owned by Christopher LeFevre. (Compl. ¶¶ 1, 7.) TRH is also a limited liability company with a principal place of business in Auburn, Maine. (Compl. ¶ 2.) Hisey, a natural person residing in the State of Ohio, is the general partner of TRH. (Compl. ¶¶ 3, 8.)

On or about July 15, 2021, Hisey, on behalf of TRH, and LeFevre, on behalf of Mystique, executed an Amended & Restated Ground Lease Agreement (the "Lease"), effective July 1, 2021. (Compl. ¶ 11; O'Brien Aff. ¶ 6; Pl.'s Ex. 1.) Through the Lease, TRH rented Units Nos. 9 and 10 of the Mystique Way Condominium, located at 41 Mystique Way in Auburn, Maine (the "Premises"). (Compl. ¶¶ 6, 11; O'Brien Aff. ¶ 3; Pl.'s Ex. 1 § 1.) The Premises were undeveloped, and TRH rented them to develop and construct an Adult Use Marijuana Cultivation and Products Manufacturing Facility within the meaning of the Cannabis Legalization Act at 28-B M.R.S. §§ 101-1102. (Compl. ¶ 12; O'Brien Aff. ¶ 6; Pl.'s Ex. 1 § 6(c).)

The Lease provided a three-year term. (Compl. ¶ 13; O'Brien Aff. ¶ 7; Pl.'s Ex. 1 § 3(a).) TRH agreed to pay rent in the amount of $64,800 for the first year, payable in equal monthly installments of $5,400. (Compl. ¶ 14; O'Brien Aff. ¶ 8; Pl.'s Ex. 1 § 4(a).) Thereafter, the base rent would increase by 2% each year over the previous year. (Compl. ¶ 14; O'Brien Aff. ¶ 8; Pl.'s Ex. 1 § 4(a).) In addition, TRH was responsible for payment of all taxes and utility expenses, as defined by the Lease; its proportionate share of the Mystique Way Condominium Association common expenses; and for securing, maintaining and paying for insurance. (Compl. ¶ 15; O'Brien Aff. ¶ 9; Pl.'s Ex. 1 § 7(a).) TRH also agreed to pay its pro rata share of the real estate taxes assessed against the parcel, which was set to 6.50% until improvements were constructed on the Premises. (Compl. ¶ 16; O'Brien Aff. ¶ 10; Pl.'s Ex. 1 § 7(g).) Finally, TRH gave Mystique a

2

security deposit of $1,200. (Compl. ¶ 18; O'Brien Aff. ¶ 12 Pl.'s Ex. 1 § 5.)

The Lease further provided that TRH was solely responsible for constructing, developing and locating buildings on the Premises. (Compl. ¶ 17; O'Brien Aff. ¶ 11.) It also contained an unconditional guaranty, provided by Hisey. (Compl. ¶ 19; O'Brien Aff. ¶ 13; Pl.'s Ex. 1, at 19.) That provision guaranteed all obligations of TRH's of any kind or nature under the Lease, including that Hisey shall pay all costs of collection incurred by Mystique in collecting amounts due thereunder. (Compl. ¶¶ 19, 20; O'Brien Aff. ¶ 14; Pl.'s Ex. 1, at 19.)[2]

TRH never commenced development or construction of a cannabis facility on the Premises. (Compl. ¶ 21; O'Brien Aff. ¶ 15.) TRH made an initial rent payment to Mystique in the amount of $6,061.20 on August 8, 2021, but it did not make any further payments. (Compl. ¶ 22; O'Brien Aff. ¶ 16.) Hisey made no payments of rent to Mystique. (Compl. ¶ 23; O'Brien Aff. ¶ 17.) According to the Lease, TRH's failure to make payments of amounts due thereunder within ten days after becoming due constituted a default that, subject to a thirty-day cure period, permitted Mystique to terminate the Lease. (Compl. ¶ 24; O'Brien Aff. ¶ 18; Pl.'s Ex. 1 § 22(a).) The Lease instructed that Mystique should terminate the agreement on account of TRH's failure to cure its non-payment of amounts due, and that TRH would pay Mystique the difference between the amounts owed by it and amounts received by Mystique from a replacement tenant for the balance of the term of the Lease. (Compl. ¶ 25; O'Brien Aff. ¶ 19; Pl.'s Ex. 1 § 22(a).) Under these circumstances, TRH also agreed to pay Mystique for all costs of reletting the Premises. (Compl. ¶ 26; O'Brien Aff. ¶ 20; Pl.'s Ex. 1 § 22(a).) Finally, if Mystique terminated the Lease due to a breach by TRH, TRH agreed that it would pay future rents due from the date of termination through the remainder of the Lease's term, less amounts received by Mystique from a substitute rental.

---

[2] The parties provided no basis to distinguish the case against Hisey from the case against TRH. Therefore, the court treats them the same for the purposes of this Motion.

3

(Pl.'s Ex. 1 § 22(a).)

In the event of a default or breach by Mystique, TRH was required to give Mystique timely notice in writing specifying Mystique's failure to perform an obligation under the Lease. (Pl.'s Ex. 1 § 22(e).) Mystique's receipt of the written notification of breach triggered a thirty-day period when Mystique could cure its breach. (Pl.'s Ex. 1 § 22(e).) No default or breach by Mystique could accrue until the expiration of this curative period. (Pl.'s Ex. 1 § 22(e).)

Mystique noticed TRH and Hisey of TRH's default for non-payment by letter addressed to Hisey dated March 29, 2022. (Compl. ¶ 27; O'Brien Aff. ¶ 21.) Mystique received no response from Hisey or TRH, and it accordingly terminated the Lease by letter dated May 6, 2022, addressed to Hisey on behalf of TRH. (Compl. ¶ 28; O'Brien Aff. ¶ 22.) As of the date of termination, Mystique was compliant with the Lease. (Compl. ¶ 29; O'Brien Aff. ¶ 23.)

Mystique calculates that, at the time of termination, TRH owed Mystique $236,319.42, plus the cost of collection. (Compl. ¶ 30; O'Brien Aff. ¶ 24). This amount is broken down as follows: $66,297.66 for accrued rent, condominium association fees, and real estate taxes less TRH's security deposit; $155,443.92 for future rent and condominium association fees; and $14,577.42 for future real estate taxes. (Compl. ¶ 30.) As of the date of filing its complaint, Mystique was unable to re-let the Premises to a substitute tenant. (Compl. ¶ 31; O'Brien Aff. ¶ 25.) However, it advertised the Premises as available for rent beginning on August 4, 2022. (Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. Attach. 3-4.)

In opposition, the Defendants state the following facts:

The Lease was executed following circulation of a draft lease agreement. (Defs.' Opp'n to Pl.'s Mot. Attach. 2; Hisey Aff. ¶¶ 12-16.) After the draft agreement was circulated, Hisey, on behalf of TRH, met with Sean O'Brien of Mystique Way, LLC ("O'Brien") at the Premises during

4

June 2021. (Hisey Aff. ¶ 12.) The first iteration of the draft required TRH take the Premises in its "as is" condition. (Hisey Aff. ¶ 13.) During the June 2021 meeting between Hisey and O'Brien, Hisey told O'Brien that TRH would not accept the "as is" condition and suggested that O'Brien modify the draft. (Hisey Aff. ¶ 13.) O'Brien complied, and the revised draft provided that "[Mystique] will cause removal of construction debris, miscellaneous machines and equipment, brush piles and old tree stumps that cannot be burned" from the Premises. (Hisey Aff. ¶ 14.) This language is incorporated in the Lease in section 6(a). (Hisey Aff. ¶ 15.)

After the Lease's execution, Mystique did not remove the debris, equipment and brush from the Premises. (Hisey Aff. ¶¶ 19-20.) Ryan Raymond, Mystique's project manager who oversaw the Premises, added more material and debris to the Premises where he stored dirt excavated from a project located at another site in the Mystique Way Condominium. (Hisey Aff. ¶¶ 25-26.) Hisey visited the Premises approximately one year after the execution of the Lease, and he observed that the Premises were not cleared and were in substantially the same condition as when the Lease was executed. (Hisey Aff. ¶ 29.)

Section 22(a) of the Lease provides that, in the event of a breach by TRH as tenant, Mystique, as landlord, "shall make reasonable efforts to secure a rental equal to the prevailing local rate for the Premises." (Defs.' Opp'n to Pl.'s Mot. Attach. 3.)

## LEGAL STANDARD

Prejudgment attachment may operate harshly upon the party against whom it is sought, therefore courts require "strict compliance with the procedures prescribed by legislation and implemented by court rules." *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993). Maine Rules

5

of Civil Procedure 4A and 4B[3] provide that a party may seek an attachment of property and attachment on trustee process "by filing with the complaint a motion for approval of the attachment" supported by an affidavit or by affidavits setting forth specific facts to warrant the required finding by the court.[4] M.R. Civ. P. 4A(c) and (i); M.R. Civ. P. 4B(c). Affiants must "set forth specific facts sufficient to warrant the required findings" on both liability and damages for a court to grant attachment or trustee process. M.R. Civ. P. 4A(c) and (i); M.R. Civ. P. 4B(c); *see Wilson*, 634 A.2d at 1255. A court may approve attachment and attachment on trustee process upon a finding "that it is more likely than not that the plaintiff will recover judgment . . . in an aggregate sum equal to or greater than the amount" of the attachment or the trustee process. M.R. Civ. P. 4A(c); M.R. Civ. P. 4B(c); *Portland Museum of Art v. Germain*, 2019 ME 80, ¶ 5 n.3, 208 A.3d 772 (reaffirming application of the preponderance of the evidence standard in considering prejudgment motions for approval of attachment and attachment on trustee process).[5]

To determine whether it is more likely than not that a plaintiff will recover judgment in an aggregate sum at least in the amount sought for attachment, courts assess "the merits of the complaint and the weight and credibility of the supporting affidavits." *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826. Courts can consider any clearly applicable affirmative defense raised by the defendant in its determination of whether the requirements of Rules 4A(c) and 4B(c) are met. *Id.* "However, a court need not address complex legal issues or rectify factual disputes in a summary attachment hearing." *Id.*

---

[3] The standard for attachment on trustee process set forth in Maine Rule of Civil Procedure 4B is virtually identical to the process for attachment set forth in Rule 4A. *See Libby O'Brien Kingsley & Champion, LLC v. Blanchard*, 2015 ME 101, ¶ 5, 121 A.3d 109.

[4] Defendants observe that Mystique's Motion was filed after its Complaint was, and question whether that was untimely. (Defs.' Opp'n to Pl.'s Mot. Attach 4 n.2.) The court does not read the applicable rules of procedure to prevent a plaintiff from filing a motion for attachment after their complaint was filed.

[5] Attachment and trustee process also require proof of unavailability of "other security" to satisfy the potential judgment. *See* M.R. Civ. P. 4A(c). The parties' do not dispute the unavailability of other security to satisfy a judgment for Mystique.

6

## DISCUSSION

The court's analysis of whether attachment should be approved is based on the plaintiff's complaint, affidavits provided by the parties, and accompanying attachments. On November 14, 2022, Mystique submitted a singular affidavit, by Sean O'Brien, accompanied by a copy of the Lease and other attachments. TRH submitted an affidavit by Hisey with its opposition to the Motion on November 28, 2022. After considering these materials, the court find that Mystique is more likely than not to succeed on its claim for breach of contract and that it is entitled to an attachment and attachment on trustee process in the amount of $26,340.00.

I.   *Based on this record, it is more likely than not that Mystique will prevail on its breach of contract claim against TRH and recover judgment in an aggregate amount equal to or greater than the $26,340.00.*

A plaintiff asserting a breach of contract action must demonstrate breach of a material term, causation, and damages. *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. A breach is "material," or total, thereby justifying termination of the agreement, when the breaching party does not perform a duty "that is so material and important as to justify the injured party in regarding the whole transaction as at an end." *H&L Realty, LLC v. JJ Cars, LLC*, 2021 ME 14, ¶ 14 n.6, 246 A.3d 1176 (quotation marks omitted). On the other hand, a merely partial breach is immaterial, and the non-breaching party must still perform their obligations under the contract so that it does not breach the contract itself. *Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 10, 697 A.2d 417.

a.   *TRH breached the Lease when it failed to give proper notice of Mystique's purported default and then suspended rent payments.*

The parties agree that they entered into the Lease. They agree further that TRH made an initial rent payment, but ceased paying rent thereafter, and that TRH never commenced development of a cannabis cultivation or manufacturing facility at the Premises. Unless TRH's

failure to perform its payment obligations under the Lease was justified, its non-payment constitutes a default in breach of the Lease for which it is liable to Mystique.

The Defendants claim that TRH was justified in suspending rent payments to Mystique because Mystique materially breached the contract when it failed to clear the Premises of debris and equipment and permitted storage of additional fill at the Premises. The Defendants further claim that Hisey put Mystique on notice of the materiality of Mystique's covenants to clear the Premises of debris and equipment and to not store additional fill there during his June 2021 meeting with O'Brien. Nevertheless, the record suggests that Mystique is more likely than not to prevail on its breach of contract claim.

Section 22(e) of the Lease provided that Mystique "shall in no event be in default in the performance of any of [its] obligations . . . unless [it] shall have failed to perform such obligations within thirty (30) days after receipt of written notice by [TRH] to [Mystique] properly specifying wherein [Mystique] has failed to perform any such obligation." (Pl.'s Ex. 1 § 22(e).) Hisey may have made clear that the site clearance provision was important to TRH prior to the lease execution. That does not mean he is not required to provide written notice to Mystique of Mystique's purported breach. The contract specifically requires that Mystique cannot be in default until they have had an opportunity to cure.

For the foregoing reasons, based on the current record, Mystique proved it is more likely than not to succeed on the merits of its breach of contract claim.

> b. *The amount available for attachment and trustee process is limited by the cursory evidence of lost condominium association fees and real estate taxes, and by Mystique's delayed efforts to relet the Premises.*

Generally, damages cannot be assessed based on mere guess or conjecture. *Hincks Coal Co. v. Milan*, 134 Me. 208, 212 (1936). When a contract is breached, the non-breaching party has an affirmative duty to take reasonable steps to mitigate their damages. *Schiavi Mobile Homes, Inc.*

8

*v. Gironda*, 463 A.2d 722, 724 (Me. 1983). Mitigation, however, is an affirmative defense and it is therefore "incumbent on the defendant to show that a plaintiff failed to take reasonable steps to mitigate." *Marchesseault v. Jackson*, 611 A.2d 95, 99 (Me. 1992).

At the outset, the court notes that Mystique supplied no evidence for how it calculated accrued and future condominium association fees and real estate taxes. Accordingly, these line items cannot be bases for attachment or trustee process. Nor can future rents in this case. Mystique's allegation that they are "unable to re-let the Premises" provides no means for the court to find the amount of lost future rents it is more likely than not that Mystique would recover as damages. Therefore, only accrued rents, which are reasonably calculable based on the record before the court, are available for attachment.

Next, mitigation doctrine also limits the amount of accrued rent available for attachment or trustee process in this case. The Defendants argue that Mystique's failure to take reasonable steps to find a new tenant is evinced by the absence of a tenant at the Premises. Mystique can show that it began advertising the Premises to new prospective tenants during August 2022. It also claims that the Premises were developed specifically for commercial adult use cannabis cultivation and products manufacturing, a niche that limits the availability of prospective tenants. However, there is nothing in the supporting affidavits about the market niche. Mystique is unlikely to recover judgment in any amount for Defendants' purported default until the period beginning August 4, 2022, when Mystique first took steps to relet the Premises by listing them for sale or lease. Thus, attachment for accrued rents is proper for the period beginning August 4, 2022, through the January 4, 2023, oral argument before the court as follows:

| Month | Amount |
| --- | --- |

| | |
|---|---|
| August 4 to September 4, 2022 | $5,508.00[6] |
| September 4 to October 4, 2022 | $5,508.00 |
| October 4 to November 4, 2022 | $5,508.00 |
| November 4 to December 4, 2022 | $5,508.00 |
| December 4, 2022, to January 4, 2023 | $5,508.00 |
| Setoff(s): | -$1,200.00 (security deposit) |
| **Total:** | **$26,340.00** |

## CONCLUSION

Based on the foregoing, the entry will be: Mystique's Motion for Attachment and Attachment of Trustee Process is GRANTED in the amount of $26,340.00.

SO ORDERED.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: Jan 9, 2023

Thomas R. McKeon
Justice, Business & Consumer Court

Entered on the docket: 01/10/2023

---

[6] This amount represents the monthly rent payment during the second year of the Lease, which incorporates a 2.0% annual base rent increase above the $64,800.00 annual base rent from year one.